## Pennsylvania Bank Assignees' Account.

*Tax on Bank Dividends, when valid as against Creditors.—Preference among Creditors of Insolvent Bank.—Lien of State Taxes on assigned Estate.*

1. Where a tax upon bank dividends, actually declared, is properly laid, the creditors of the bank cannot dispute it collaterally, though the bank was insolvent at the time, and the dividend a fraud upon stockholders and creditors.

2. In bank assignments, under the Act of 16th April 1844, note-holders are entitled to a preference over the holders of certificates of deposit.

3. Taxes due the commonwealth, by the bank, at the date of the assignment, are not a lien on the estate assigned.

APPEAL from the Common Pleas of *Philadelphia.*

These were appeals by the Farmers' and Mechanics' Bank, and other creditors of the Bank of Pennsylvania, and also by the Commonwealth and the assignees, from the decrees of the court on the first account of the assignees of the Bank of Pennsylvania.

On the 17th of February 1858, the Bank of Pennsylvania made an assignment of all the estate, real and personal, of the bank, to William C. Patterson, William Lyttleton Savage, and John D. Taylor, in trust for the benefit of creditors.

The first account of the assignees was filed in September, A. D. 1858, which was referred to George W. Biddle, Esq., as auditor, with power to audit, settle, and adjust the same, and report distribution of the balance in the hands of the assignees. A number of claimants appeared before the auditor in person or by counsel, who were ranged by the auditor in classes consisting of

1. The Commonwealth, who claimed a right to priority over all parties as to some of her claims.

2. Note-holders.

3. Depositors and check-holders.

4. General creditors.

5. Persons demanding the return of specific items of property or their proceeds, as belonging to them exclusively, and as forming no part of the assets of the bank.

The auditor directed that there should be delivered to John

[Pennsylvania Bank Assignees' Account.]

Welsh, forty bonds, for $500 each, of the Montour Iron Company, which had been deposited with the bank as collateral security for the payment of ten thousand dollars, which had been paid in full. The claim of Jason L. Fennimore, for services as assistant cashier from September 19th 1857 to date of assignment, amounting to $625, was allowed as a set-off against the sum of $651.51, which was due him by the bank.

A claim for $873.54, for money advanced by Peabody & Co. to Alexander Benson, for moneys expended in the service of the bank, in Europe, was also allowed.

Certain persons holding checks for dividends were placed on the same footing as depositors. Where no checks were held as special claims for dividends, they were rejected. A number of other claims were examined, and their appropriate position among the creditors of the bank ascertained and determined by the auditor.

The cash balance in the hands of the assignees under this account, was only $7492.10. Of this he awarded $2695.05 (the proceeds of two notes, viz., one of Simon Hester, due March 24th 1859, for $799, and one of Robert P. Smith, due April 27th 1858, for $1896.05, which were introduced into the account of the assignees), to John Farnum & Co., who were held entitled to recover it as money received by the assignees to their use, being collaterals left with the bank to secure a claim which was afterwards fully paid.

This sum, with the expenses of the assignment and audit, reduced the cash balance to $1305.68.

The mooted points were these :—

1. The right of the commonwealth to the tax on capital stock and dividends for the year 1857, amounting to the sum of $27,334.30, with interest, which it was claimed were liens on the real estate of the bank.

2. The question of priority among the creditors, and

3. The commission allowed to the assignees.

The material facts connected with the first question were as follows :—

The Commonwealth claimed,

1. The sum of $19,294.80, being a balance ascertained by settlement made in the auditor-general's office, upon March 24th 1858, being tax upon dividends made by the bank in the year 1857, and demanded under the 7th section of the Act of 15th March 1849 (P. L. 167), which imposes a tax of twelve per cent. upon dividends of banks not exceeding nine per cent. The dividends declared by the Bank of Pennsylvania, in the year 1857, amounted to nine per cent.

2. They claimed the sum of $8039.50, being a balance ascertained by settlement made in the auditor-general's office, up to March 24th 1858, being tax upon capital stock of the bank, and

demanded under the 33d section of the Act of 29th April 1844 (P. L. 498), which imposes a tax upon the stock of all banks on which a dividend of six per cent. per annum, or more, shall be made and declared, at the rate of one half-mill on each one per cent. of such dividend.

Upon these two claims, a priority over all other creditors was set up under the thirty-third and forty-second sections of the act last referred to, and a specific lien was asserted upon the fund in the hands of the assignees.

3. They claimed the sum of $25,848.55, being a balance ascertained by settlement made in the auditor-general's office upon April 16th 1858, being the amount of unclaimed interest on the loans of the commonwealth, from February 1st 1852, to August 1st 1857, inclusive, and placed in the bank by the state treasurer, to be disbursed under the provisions of the Act of 13th March 1830.

No preference or priority was claimed for this last amount, but it was to be placed on the same footing as any other deposit in the bank.

In support of all these claims, certified copies of the settlements made by the auditor-general were given in evidence, and it was contended by the attorney-general that, under the Act of 30th March 1811 (5 Smith's Laws 228), these settlements, being unappealed from within the time allowed by law, after notice given, were conclusive, and that no testimony could be given by the creditors of the bank, the effect of which would be to call in question the correctness or truth of the facts upon which the balances were ascertained.

The positions of the attorney-general, both as to the commonwealth's right of priority and lien, and as to the conclusiveness of these settlements, were denied, and testimony was offered, subject to the objection of the commonwealth, that no dividends or profits were really made by the Bank of Pennsylvania in the year 1857, and that the bank was insolvent during that year; and that the market value of the stock of the bank, after its suspension in 1857, did not exceed ten dollars a share. An apparent error of one-half per cent. too much in the tax upon stock, amounting to $803.95, was pointed out, and agreed by the attorney-general to be a proper subject of correction, if in truth existing.

A claim was also made by the assignees against the commonwealth for compensation to the bank as transfer agent, from January 1st 1857 to February 28th 1858, at the rate of $500 per month, amounting to $7000. This credit, which was admitted to be correct, the assignees elected to apply to the commonwealth's claim for tax upon dividends, whilst the commonwealth asked to have it applied to the amount due to the commonwealth as a depositor.

[Pennsylvania Bank Assignees' Account.]

The auditor was of opinion that the settlements made by the auditor-general, of which notice was given to the bank, and which were unappealed from within the time prescribed, were conclusive of the amounts thereby ascertained, and that no testimony could be received for the purpose of showing the condition of this institution during the year 1857.

The testimony offered, therefore, was disregarded, and the right of the commonwealth to claim the balances found due, considered as finally settled.

The auditor was, however, of opinion that no preference can be given to the claims for taxes upon the dividends and capital stock of the bank.

The claims for taxes upon the stock and dividends (reduced by the correction of the error before mentioned, and by the credit for the services rendered by the bank as the agent of the commonwealth, which, it was admitted, may be done), were placed in the same class as other general creditors.

The third claim of the commonwealth above referred to, was placed on the same footing as the claims of other depositors.

On the question of distribution of the cash balance, the following are the material facts:—

On the part of the holders of notes, it was contended that the law required the assignees to pay out of the assets of the bank, the debts and liabilities of the same in the following order : First, the note-holders ; Second, depositors ; Third, all other creditors, except stockholders, who shall be last paid. On the part of the other creditors, it was contended that there was no law applicable to the Bank of Pennsylvania, that required any preference in the order of payment of its liabilities, and that therefore all its creditors were entitled to share equally in the distribution of its property.

The Bank of Pennsylvania was rechartered by Act of 28th March 1855 (P. L. 134), for twenty years from the 4th March 1858, subject to the provisions of the Act of 16th April 1850, regulating banks (P. L. 477). The act rechartering the bank was duly accepted. On the 9th November 1857, at a meeting of the stockholders duly convened, the provisions of the act passed 13th October 1857 (P. L. 1858, 611), "Providing for the resumption of specie payments by the banks and for the relief of debtors," were accepted, and notice of this acceptance was sent to the auditor-general of this commonwealth, upon the 10th November 1857, under the terms of the seventh section of the act.

At a meeting of the stockholders, held upon the 1st February, and adjourned to the 10th February 1858, a resolution was introduced, which after amendment, was passed in the following words :—

"Resolved, That it is the opinion of this meeting, that an as-

signment of all the estate and property of said bank should be made to assignees, in trust for distribution, among the creditors thereof, according to the regulations and directions of the Act of 1850, regulating banks, if they have or can obtain the power to do so."

At a meeting of the board of directors of the bank, held on the 16th of February 1858, a preamble and resolutions were adopted, as follows :—

" Whereas, this bank is now unable to pay its indebtedness, therefore,

" Resolved, That this bank deem it expedient to wind up the affairs of said bank, and to make a general assignment of all the estate, real and personal, of said bank, for distribution amongst the creditors thereof, according to law.

" Resolved, That the board approve of the instrument of assignment now laid before them, and that the same be forthwith duly executed and delivered as the act and deed of the bank and of the directors thereof, and that, in testimony thereof, the president of this bank be, and he is hereby authorized and required to affix thereto the corporate seal of said bank, and attest the same, and deliver said deed."

On the 17th February 1858, the assignment was duly executed,

It was also shown that an application had been made for the appointment of commissioners under the third section of the Act of 13th October 1857, to investigate the condition of the Bank of Pennsylvania; and that commissioners, duly appointed by the governor upon the 17th November 1857, entered upon this investigation, and on the 20th February 1858, made a report upon this subject.

Upon this state of facts, the counsel on behalf of the note-holders contended,

1. That the Act of 28th March 1855, extending the charter of the Bank of Pennsylvania, made the bank amenable for the unexpired term of its old charter, to the provisions of the 39th section of the Act of 16th April 1850, directing the debts, in case of an assignment, to be paid in the following order : first, note-holders ; second, depositors ; third, all other creditors, except stockholders, who shall be paid last.

Or, 2. That in all events, the acceptance by the Bank of Pennsylvania of the provisions of the Act of 13th October 1857 ; the appointment of commissioners to report upon its condition, and their report under this appointment; the declared insolvency of the bank at the time of making the assignment, and the expressed wish of the stockholders, that this assignment should be made under the terms of the Act of 1850 ; or some or all of these facts, made the 39th section of the Act of 16th April 1850 applicable to this assignment.

[Pennsylvania Bank Assignees' Account.]

Or, 3. That the eighth and ninth sections of an act entitled, "An Act to extend the charter of the Commercial Bank of Pennsylvania," passed the 26th of April 1844 (P. L. 419), which provided for a similar order in the payment of the liabilities of a bank out of its assigned estate ; applied to the present assignment, and settled the question of distribution.

The counsel for the general creditors contended,

1. That the Act of 28th March 1855, extending the charter of the bank for twenty years from the 4th March 1858, could in nowise make applicable the provisions of the Act of 1850 to the present case, because at the time of the assignment, the bank was still under its old charter.

2. That the acceptance of the Act of 13th October 1857, and the appointment of and report by the commissioners under the third section of this act, did not change the order of distribution, so as to bring it within the terms of the Act of 1850, because the assignment contemplated under the third section of the Act of 1857 was an involuntary and not a voluntary one. Nor could the expressed wishes of the stockholders, or the actual condition of the bank, make a difference in this respect.

3. The Act of 26th April 1844 had no application at all. That act provided in its nineteenth section, that before it should go into operation, it should first be accepted or approved at a general meeting of stockholders, to be called for the purpose of taking the subject into consideration. Neither the Commercial Bank, specially referred to, nor the Bank of Pennsylvania, had ever so accepted this act, and therefore it had no existence as to the present assignment.

4. That the decision in The Bank v. Spangler, 8 Casey 474, was inconsistent with the order of preference claimed. It was decided, in that case, that any note-holder or depositor might offset his indebtedness from the bank to any claim of the bank.

The auditor decided that the law applicable to the present assignment required the debts of the bank to be paid out of the assets in the hands of the assignees in the following order :—

First, note-holders ; second, depositors ; and third, all other creditors except stockholders, who shall be paid last.

He therefore distributed the net balance in the hands of the accountants, to wit, $1305.68, *pro rata* among the note-holders, whose claims, as proved before him, amounted to $264,810.

To this report numerous exceptions were filed by the parties in interest, but the auditor on examination overruled them all, adhering to the rulings contained in his general report.

The report of the auditor was affirmed by the Common Pleas, from which decree appeals to this court were taken by the Commonwealth, the Farmers' and Mechanics' Bank, Jason J. Fennimore, Anthony J. Antelo, the Bank of North America, John

[Pennsylvania Bank Assignees' Account.]

Bruner, and other creditors, and by the assignees. Exceptions were also filed here by Pickersgill & Son and the Hammet Desk Manufacturing Company, complaining of that portion of the auditor's report which disallowed their claims, but they were not noticed by this court.

*John C Knox*, Esq., for the commonwealth, contended,

1. That the declaration and payment of dividends was conclusive upon the question of the right of the state to tax them.

2. That the settlement of the account unappealed from, was conclusive evidence of the validity of the claim.

3. That the amount due to the commonwealth for the taxes of 1857, was a charge upon the property assigned, and should be paid, before the fund is distributed amongst the creditors of the bank.

4. That neither the Act of 26th of April 1844, entitled "An Act to extend the charter of the Commercial Bank of Pennsylvania," nor that of 16th of April 1850, entitled "An Act regulating banks," is applicable to this assignment, and that, therefore, the only advantage which note-holders or depositors have over general creditors, is that given by the Act of 1842, where it is declared that notes and checks of insolvent banks shall be received by the assignees in payment of pre-existing debts due to the bank.

*William Rotch Wister*, for John Bruner, argued against the allowance of the claim of John Farnum & Co., against the allowance of five per cent. commissions on the $29,676.58, instead of the cash balance of $7492.10, and the allowing commissions on $26,307.22, held by them in notes and checks of the bank in pursuance of contracts made before the assignment. He also excepted to the decree under which a preference was given to the note-holders, and that which decided that holders of certificates of deposits were not entitled to rank as note-holders.

*Charles E. Lex*, for the Western Bank, the Bank of North America, and the City Bank, and *B. Gerhard*, with whom was *Meredith*, for Jason L. Fennimore, Anthony J. Antelo, the Farmers' and Mechanics' Bank, and the Bank of North America, argued that the decision of the auditor as confirmed by the court, which held that the settlements by the auditor-general, of which notice was given to the bank, and which were unappealed from within the time prescribed, were conclusive of the amounts thereby ascertained, and that therefore no testimony could be received, for the purpose of showing the condition of the bank in 1857, was erroneous; and that the commonwealth was not entitled to any preference for the payment of taxes due on the capital stock and dividends declared and paid in 1857.

*J. B. Townsend* appeared for Farnum & Co., in support of the report and the decree of the Common Pleas.

*J. F. Johnson*, for the assignees, argued that the distribution to Farnum & Co. and Jason L. Fennimore was illegal; that there was error in classifying Smith & Leaming, who held checks for dividends, with the depositors; in deciding that if certain judgments against the bank were for bank notes, they were entitled to be paid as bank notes, and not as judgments; and in not deciding that all creditors should be paid *pro rata* and without priority.

*Geo. M. Wharton*, for creditors, also objected to so much of the decree as directed a preference among creditors, and in not placing Pickersgill & Son among the most favoured class of creditors, or at least on equal footing with the others.

The Hammet Desk Company was represented by *Michener*, who claimed the return of certain materials and unfinished work in the banking-house.

The opinion of the court was delivered, May 6th 1861, by

Lowrie, C. J.—The Farmers' and Mechanics' Bank and other creditors object to the tax imposed by the auditor-general on the last dividend of the Bank of Pennsylvania, because the dividend itself was a fraud upon the stockholders and creditors, the bank being then insolvent. But the dividend was actually made, and, according to law, that fact fixes the duty of paying the required tax. It is conceded that the bank could not claim a deduction for its own fraud. The tax was laid in proper form, with notice to the assignees, and no appeal was taken, and therefore it was conclusively laid. Possibly the assignees representing the creditors' rights in the estate might have appealed; but we do not see how any creditor could do it, for his right is not a title to any portion of the estate, but to an account of the proceeds of it. And we cannot possibly sanction a principle that would let a creditor come in collaterally to dispute the tax. Liens on land for taxes are very common in our law, and many taxes are collected from estates assigned or administered, and it cannot be a sound principle that would require the public officers to attend all audits and justify the public taxes when any creditor should dispute the return on which they are founded. The state officers have performed a plain duty according to law, and if creditors are injured, their remedy must be against those who are chargeable with the fraud. We must therefore dismiss the appeal taken by the Farmers' and Mechanics' Bank on this matter.

John Bruner also appeals, and complains that the commissions

[Pennsylvania Bank Assignees' Account.]

allowed to the assignees were too large, and especially that, by the decree, note-holders are preferred to the holders of certificates of deposit.

Under all the circumstances of this case, we cannot say that there is anything unreasonable in the allowance made to the assignees by the auditor and the court below.

Are note-holders entitled to a preference ? On this point we adopt the conclusions of the auditor in the court below, and answer in the affirmative. The evidence of the legislative intent to give this preference is contained in numerous special statutes, so as to be overwhelming, and we think that the reasoning of the learned auditor is sufficient to show that it is embodied as a general rule of bank assignments in the Act of 26th April 1844. We do not need to repeat or add to his discussion of the question. Though certificates of deposit have some resemblance to bank notes, yet they are in form, and origin, and purpose, different, and fall into a different class. We must therefore dismiss Bruner's appeal.

The commonwealth claimed that the taxes due her are a lien on the estate assigned, and she appeals because this was not allowed. We are not convinced that there is any law in support of this claim, and think that the auditor's report shows very satisfactorily that the statutes relied on do not support it. We must dismiss this appeal.

The appeals are all dismissed at the costs of the respective appellants.