# Callery's Appeal.

*Taxation—Personal property tax—Corporations—Tax on capital stock—Foreign corporations—Holding companies—Registration— Doing business—Words and phrases—Tangible assets—Assessment by auditor general—Act of June 17, 1913, P. L. 507, and July 15, 1919, P. L. 948—Failure to make return—Penalty—Remission.*

1. The shares of stock of a foreign corporation owned by a resident of Pennsylvania is subject to the personal property tax for county purposes under the Act of June 17, 1913, P. L. 507, where it appears that although the corporation is registered to do business in the State, it has no tangible property there subject to the capital stock tax under the Act of July 15, 1919, P. L. 948.

2. In such case it is immaterial that the corporation owns the entire capital stock of another corporation which has extensive holdings of property in this State, and is engaged extensively in business herein; the shares of stock of the subsidiary company are not tangible assets.

3. Nor is it material that the auditor general has assessed and such foreign corporation has paid the capital stock tax under the Act of July 15, 1919, P. L. 948, if it appears that the corporation was, in fact, not liable for such tax. The auditor general's report in such case is not conclusive upon the county authorities.

4. Value, for purposes of capital stock taxation, comes through property, and if the corporation is doing business here, with no property or capital located or used in the Commonwealth assessable for state purposes, its stock has no value upon which a capital stock tax may be based.

5. Registration in the nature of a license, or a right to do business, has no taxable value.

6. Acts in conformity to, and in furtherance of, the sole business purposes of a going concern, represent "doing business," but such acts alone do not constitute "doing business in and liable to taxation," within the meaning of the statute.

7. To justify the imposition of a tax without a statute plainly warranting it, it is not enough to show that the absence of a tax works an injustice in permitting many persons to escape taxation.

8. A personal property tax is a personal levy against resident holders, computed on the value of shares of stock owned by them, not taxable for state purposes or exempt under state laws.

9. Corporate tax is a levy by the State against the capital stock as its value is computed from the assets, less such as are nontaxable, exempt, or on which a state tax has been paid.

10. A corporation does not lose its corporate identity when its stock is all owned by another corporation.

11. Where a holding company is a shareholder of a subsidiary company, it stands in the same relation to that company as any individual owner of stock, but the legal relations of the two companies, qua companies, are entirely different, as must be the rights of their stockholders.

12. Where a citizen fails to make a return of personal property through an honest misconception of the law relative to the taxing statutes, the courts have no power to relieve him from the penalty of 50 per cent for the failure, but the board of revision should do so.

Justices Frazer, Sadler and Schaffer dissent.

Argued October 20, 1921. Appeal, No. 151, Oct. T., 1921, by Percy F. Smith et al., constituting the Board of the Assessment and Revision of Taxes, from order of C. P. Allegheny Co., July T., 1921, Docket B., No. 1178, sustaining appeal from tax assessment, in re Appeal of James D. Callery from assessment of personal property for taxation. Before Moschzisker, C. J., Frazer, Walling, Simpson, Kephart, Sadler and Schaffer, JJ. Reversed.

Appeal from tax assessment. Before Shafer, P. J.

The opinion of the Supreme Court states the case.

Appeal sustained. Percy F. Smith et al., Board of Revision of Taxes, appealed.

*Error assigned* was order, quoting it.

John C. Bane, with him Oscar T. Taylor, County Solicitor, and Wm. C. Jacob, Assistant County Solicitor, for appellants.—The situs of intangible personal

property for taxation is the domicile of the owner: Com. v. Curtis Pub. Co., 237 Pa. 333, 335; Com. v. Buffalo & Lake Erie Tr. Co., 233 Pa. 79, 80-2. And the domicile of a corporation is the state of its origin: Com. v. Standard Oil Co., 101 Pa. 119, 146.

The right of Allegheny County to assess and collect the tax in controversy here arises out of the Act of 1913. The "principal purpose" of that act "is to give the tax to the counties instead of, as theretofore, having it collected as a state tax and part of it paid to the counties": Provident Life & Trust Co. v. Klemmer, 257 Pa. 91, 100.

The precise question involved here does not seem to have been involved in any preceding case; but many principles stated in former cases are directly applicable here: Dupuy v. Johns, 261 Pa. 40, 45-6; Com. v. Coal Co., 156 Pa. 488; Com. v. Furnace Co., 268 Pa. 283.

*David A. Reed*, of *Reed, Smith, Shaw & Beal*, for appellee, cited: Com. v. R. R., 251 Pa. 6; Com. v. Westinghouse Air Brake Co., 251 Pa. 12.

OPINION BY MR. JUSTICE KEPHART, January 3, 1922:

This is an appeal from the Common Pleas of Allegheny County, striking off a personal property tax levy. It was stated at argument that the lower court's action affects tax revenues amounting to $1,250,000 heretofore received by the county, and ultimately determines the county's right to impose this tax on property valued at half a billion dollars. We mention this to indicate the far-reaching effect of the conclusion we may make in the present case.

To justify the imposition of a tax without a statute plainly warranting it, it is not enough to show that the absence of a tax works an injustice in permitting many persons to escape. The taxing power lies with the legislature, and a survey of our taxing enactments evidences a policy to tax residents on their investments in corporations, either personally or through the cor-

poration. Many exemptions exist, some based on a supposed greater benefit to the State; but, through all their various forms, the predominating policy runs to cause the citizen so investing capital to bear a fair share of the cost of maintaining the government, and he who seeks to be excused must bring himself within the class of exempt persons.

It is impossible to always attain absolute equality within the same class of taxable subjects, but, having in view the state's paramount purpose, with the legislative will before them, courts must not, by astute efforts, block the intendments of the Commonwealth and frustrate a policy that has for its foundation peace and good will among our citizens, based on equality. On the other hand, courts should not be assiduous to burden those who, through energy, thrift, ability and resourcefulness, have acquired an abundance of the subjects of taxation, simply because they are in this fortunate position.

The present appeal is not an endeavor to evade taxation, but one which earnestly and fairly raises questions affecting our taxing laws and the true meaning of their various interpretations heretofore made by this court. If other residents, in the same position, with appellee's view as to the law, have not been taxed, still more then this appellee, and others in like position who in the past have paid the tax now disputed, should not be required to continue such payments if the assessment is not authorized by law.

The County of Allegheny has for some time assessed and collected what is commonly called a personal property tax, under the Act of June 17, 1913, P. L. 507, against resident holders of shares of stock of foreign corporations, and for the year in question assessed against appellee a tax of four mills on $400,000, the value of 2,444 shares of stock of the Gulf Oil Corporation.

Appellee, a taxpayer, took an appeal from the board of revision, which the court below sustained, relieving

him from payment of the tax in question, for the reason that the Gulf Oil Corporation, itself, was liable to a tax, and, even if it was not, the action of the auditor general determining that it was so liable was conclusive on the court. The county takes this appeal.

The Gulf Refining Company is a Texas corporation, hereinafter termed "subsidiary," incorporated for the purpose of the production and manufacture of petroleum. It does business in the United States, Mexico and elsewhere. Later, the Gulf Oil Corporation, hereinafter termed "holding company," was formed. It was incorporated under the laws of New Jersey for the purpose of "holding the stocks of subsidiary companies engaged in the business of producing, transporting, manufacturing and marketing petroleum and petroleum products." Holding company acquired all the stock of subsidiary and was recently registered in Pennsylvania; it filed a consolidated report in the office of the auditor general and paid a capital stock tax of $11,774.10 on approximately $2,250,000, and a loan tax for the year 1920. Both these taxes had been heretofore paid by subsidiary. Holding company has an authorized stock issue of $60,-000,000, of which $36,000,000 is outstanding, the whole issue valued in round numbers at $59,900,000.

All tangible property, real and personal, is owned by the subsidiary in its own name; it is a going concern, functioning through its own charter powers. The holding company does not own any tangible property in Pennsylvania, and from its report we find its intangible assets amount approximately to $113,000,000, made up of stock of foreign corporations, United States securities, bonds, advances to corporations, cash in bank, notes and accounts receivable and other miscellaneous assets. Board meetings are held, money deposited, dividends and interest paid, and all its officers reside here, the company occupying several floors of an office building in Pittsburgh.

A personal property tax is a personal levy against resident holders, computed on the value of shares of stock owned by them, not taxable for state purposes or exempt under state laws; and, in this case, the shares are taxable unless the corporation issuing them is liable for a capital stock tax or is relieved from payment by state laws.

Corporate tax is a levy by the State against the capital stock, as its value is computed from the assets, less such as are nontaxable, exempt or on which a state tax has been paid. Corporations are liable for such tax under the Act of June 8, 1891, P. L. 228, 235, section 4, as amended by the Act of June 8, 1893, P. L. 353, 354, section 1, and by the Act of July 15, 1919, P. L. 948, section 1. A tax of five mills may be levied on the value of the capital stock on all corporations, domestic and foreign, doing business, and liable to taxation, or having capital employed, or used, in this Commonwealth in any manner whatsoever.

The holding company is not incorporated as an operating company for producing, distributing, manufacturing and marketing of petroleum products, but is empowered to hold the stock of such companies, and if, in the light of some decisions of this court, we accept as conclusive the charter powers as being the only source or basis upon which a tax may be founded, we might dismiss this immediate subject by holding the Gulf Oil had no authority to function either in an executive or operating capacity as a manufacturer or vendor of petroleum products. But, apart from this, and conceding for the moment its right to actively engage in manufacturing petroleum products, was it, through its executive officers, doing a business that made it liable to a tax, or did it have property employed or used in the Commonwealth? Property employed or used refers, generally, to leasing or some such method of use: Com. v. National Cash Register Co., 271 Pa. 406.

It is contended holding company managed, supervised and controlled the various activities of subsidiary; that, as it was the executive directing energy, through its many instrumentalities, it carried on the work of the refining company; and, on the theory that the law regards the substance and not the form, through holding company's sole ownership of all subsidiary's stock, such ownership drew to it the physical property of subsidiary; and that, with the screen of corporate existence thrust aside, the holding company was in fact the owner of subsidiary's property, doing business and liable for a tax within the meaning of our tax statutes.

Let us examine the question a little more closely. Holding company is a distinct, corporate entity, as is also subsidiary. The latter has power to manufacture and sell, with all the incidental rights necessary to the prosecution of the business. Holding company, as its sole stockholder, controls subsidiary; but, to do so, it must use the rights and powers of the latter. Holding company has no authority to sell oil; but, through its officers, acting as officers of the refining company, or compelling the latter's officers to obey, it imposes its will on subsidiary. Holding company does this, however, only as sole shareholder; it could impose no liability or legal obligation on the subsidiary except as the individuals who acted were brought somewhere within the limits of the latter's functioning body. The directors of the two companies may be identical, but this would not alter the situation.

The Gulf Refining Company, the subsidiary, is the living, operating business organization, with charter powers to so act. It is this company that comes in touch with the great commercial world, from Mexico to Canada; it handles the mammoth production which gives substance to the enterprise. It is this company that directly bears the result of all acts, good or bad, in relation to or connected with the business of producing and transporting, manufacturing and marketing petroleum

and petroleum products. The sole shareholder can lawfully impose its will on Gulf Refining and enforce obedience through the latter's machinery, created by law to govern it. Gulf Oil, eo nomine, could not replevin a wheelbarrow of Refining Company, nor could it, eo nomine, execute a mortgage on the latter's property. Holding company's control does not sweep aside the corporate existence of Refining Company; the corporations are just as separate and distinct as though the sole shareholder did not exist. Gulf Oil, as sole shareholder, receives all net profits of the subsidiary company through dividends or other arrangements. Their dealing, because of share ownership, may assume various closely related forms; and, as no outstanding holder is prejudiced through such acts, there is no one to complain. The corporate lines are distinct, and we see no reason why it is not only legally right but wise to keep them so; for, while it may avail the owners of stock, in the present instance, to wipe them out, later, and, in matters of more serious import, when their interests may dictate a different attitude, it might prove disastrous to them in the extreme. A corporation does not lose its corporate identity when its stock is all owned by another corporation: Bridge Co. v. Traction Co., 196 Pa. 25, 28.

But it is urged the Westinghouse Case (251 Pa. 12) controls. There we decided that, where a domestic company was actually engaged in manufacturing business within the State, and, in order to conduct advantageously certain minor enterprises, ancillary to its main business, the property of which enterprises it already owned, it incorporated companies outside the State (which assumed control of the business in question for the domestic corporation), we would consider, for taxing purposes, the property of these foreign companies as belonging to the domestic concern; and, as thus situated, we held such property could not be taxed. There the outside enterprises were but a small part of a

large body; but here we have a subsidiary company operating under charter powers, greater than and different from the powers of the holding company, and in no way subordinate to it,—with the former exercising the powers the latter says, mistakenly, it has and exercises. Under such circumstances, the subsidiary does not cease to exist, nor are its powers and property joined with those of the holding company, even for convenient taxation; although this may be done by consolidation or merger. It is not our purpose to extend the Westinghouse decision beyond the letter of its terms. See Com. v. Shenango Furnace Co., 268 Pa. 283.

Does Dupuy v. Johns, 261 Pa. 40, control? There the Crucible Steel Company, a foreign corporation, invested capital in Pennsylvania, the largest part in manufacturing, the remainder not so engaged. We held that the corporation was liable for a capital stock tax, and its resident shareholders were wholly relieved of liability for personal property tax. Here the subsidiary, Gulf Refining, a foreign corporation, has part of its capital engaged in Pennsylvania, part in manufacturing petroleum and the residue is not so engaged. It is liable for taxation on that part of its capital employed here and not engaged in manufacturing; and its resident shareholders are not liable for a personal property tax. Up to this point the cases are parallel; from this point the additional facts present a very different situation.

So far, the resident shareholder in each company deals directly with his corporation; but another corporation (holding company) appears, with a different set of shareholders, and these claim that, because their company owns all the shares of Gulf Refining, liable to taxation, they have the same right to be relieved from personal property tax as the shareholders of the subsidiary. To reach this position, however, their holdings must be viewed by our taxing statutes through two distinct corporations; whereas the separate rights of a

shareholder must come through the corporation which issues to him his shares, and, if the source of the existence of such shares is not doing business and liable to taxation, then the shareholder's right to immunity is never gained.

In ascertaining the liability of the holding company to capital stock tax, different principles of law are involved. We must, in viewing it, eliminate actual ownership of tangible property and engagement in business as a manufacturer; for it had none of the first and did not enter upon the second. Was the holding company's stock otherwise taxable?

This company, an independent entity, with its domicile in New Jersey, used in Pennsylvania capital contributed by its shareholders in the purchase of stock of Gulf Refining, a Texas corporation; which stock it here holds on deposit in safety vaults. The use of capital by a foreign corporation in purchasing stock of a Pennsylvania corporation is not the subjection by the purchasing company of so much capital to doing business in Pennsylvania (Com. v. Standard Oil Co., 101 Pa. 119, 149; Com. v. Curtis Publishing Co., 237 Pa. 333, 337); this is likewise true if the purchase is here made of stock of a foreign corporation doing business in Pennsylvania. In purchasing, the capital is transferred to the selling company; it is that company which uses or employs it in Pennsylvania or elsewhere as it sees fit: Construction Co. v. Winton, 208 Pa. 467, 472. The thing here purchased was not, and is not now, in Pennsylvania; and the same is true of shares bought from shareholders.

We may illustrate what might happen if the law were to the contrary. Resident shareholders of a foreign corporation, not liable to state tax, must return and settle for a personal property tax. Suppose such company, with a large list of such holders, here liable to this tax, purchases ten shares in a domestic concern liable to a tax. After registration, would this purchase constitute

the "employment of capital or doing business, and liable for taxation" contemplated by the act, so as to relieve resident shareholders? It does not need much discussion to demonstrate the gross frauds that could, and probably would, be practiced if the law answered in the affirmative the proposition just put; which, of course, it does not. If ten shares will not accomplish the result, will one-third, one-half or all? Such transactions do not constitute "doing business, and liable to taxation"; nor is property or capital employed or used therein within the meaning of the law.

To what extent do the benefits of the thing bought pass on to the shareholders of the purchasing corporation? The shareholders of the two companies do not stand in the same relation to subsidiary's property or capital employed. Holding company, a corporate entity, is a shareholder of subsidiary, standing in the same relation to that company as any individual owner of stock; but the legal relations between the two companies, qua companies, are entirely different, as must be the rights of their stockholders. The thing purchased is shares of stock. In both instances the rights of the separate shareholders in their respective companies are determined by the law of New Jersey (McCloskey v. Snowden, 212 Pa. 249, 254; Kinney v. Mexican Plantation Co., 233 Pa. 232, 233), where the company was created and where the intangible property of each is properly taxable: Com. v. Curtis Publishing Co., 237 Pa. 333, 335. A corporation owns its property; the stockholder has no right to it or any part of it, and its special benefit (tax free) does not pass to him, any more than would the right to make a patented article, which the company manufactured under a license. When distributed in dividends he is entitled to his share; holding company's shareholders do not receive the dividend as shareholders of subsidiary, nor could they force a redistribution of the dividend so received; a personal property tax is not intended to reach the property of a corporation. There

is no connection under the law between the different sets of stockholders; each must work out his rights through his own company, and the rights of one do not pass to the other, under circumstances as here related.

The assets (shares of stock) so purchased, are not, as such, liable to a state tax. They are incorporeal, intangible things connected with a foreign corporation, which are not within the taxing jurisdiction of the State, the ownership of such property being referred to the state of its domicile,—its situs is there (Com. v. Standard Oil Co., 101 Pa. 119, 146; Neiler & Warren v. Kelley, 69 Pa. 403, 407; Com. v. Curtis Publishing Co., supra; Com. v. Traction Co., 233 Pa. 79, 80, 82), though the foreign corporation may be employing capital in Pennsylvania subject to tax. What is here said applies to all intangible assets of Gulf Oil, the holding company.

If Gulf Oil were a domestic corporation, owning *intangible* assets located in another state, Pennsylvania would be the taxable domicile of such assets: Com. v. Semet-Solvay Co., 262 Pa. 234, 236. Or if both Gulf Oil and Gulf Refining were domestic corporations, under the state of facts here presented, it would, when settling the capital stock tax of the former, or holding company, be liable for the fractional or proportionate part of the value of its subsidiary's shares, untaxed in Pennsylvania, as such fractional part adds value to the capital stock to be taxed. Though such intrinsic value of shares may be out of the state (Com. v. Shenango Furnace Co., supra), shares of a corporation, held by a domestic corporation, are not taxed under a personal property tax. The Act of 1913 does not make such ownership taxable (see Com. v. Lehigh Coal & Navigation Co., 162 Pa. 603, on earlier legislation), but the value of the stock thus held adds to the general value of the capital stock of the holding corporation, to be deducted as the whole or part pays a state tax; but, in personal property levies, the tax is computed on the value of the shares, qua shares,

and the Act of 1913 does not contemplate a fractional division of such value: Dupuy v. Johns, supra.

A corporation becomes liable for a capital stock tax when its stock has value through its assets to make it liable; it is on that value the tax is computed: Dupuy v. Johns, 261 Pa. 40, 45; Com. v. McGlinn Distilling Co., 265 Pa. 346, 350. Value, for purposes of capital stock taxation, comes through property, and if the corporation in question is doing business here, with no property or capital located or used in the Commonwealth assessable for state purposes, its stock has no value upon which a capital stock tax may be based.

Registration in the nature of a license, or a right to do business, has no taxable value; nonregistration simply renders a foreign corporation's acts unlawful, and registration, without more, does not cause the corporation to become liable for a state tax.

When we look for the value of Gulf Oil stock we find intangible assets, beyond our taxing jurisdiction. The best evidence of this is the company's report, where all intangibles are treated as extraterritorial. If this is the home of Gulf Oil for some purposes, as urged, the report shows the officers do not regard it as such for taxation. While these facts do not influence our decision of the main question, they show how Gulf Oil regards its intangible assets.

As the business, relating to charter purposes, of the company "holding the stock of subsidiaries," was conducted in Pittsburgh, where its board of directors met, this, it is urged, is doing business liable to taxation, though the holding company owned no property in the State.

Acts in conformity to, and in furtherance of, the sole business purposes of a going concern undoubtedly represent "doing business"; but such acts alone do not constitute "doing business in and liable to taxation," the situation which our taxing statute requires, and through which appellee bases his contentions as to the

nontaxability of his shares here in question. The act recognizes a distinction between doing business that requires registration to bring a company within reach of legal process or that will require filing a loan report, and doing business in and liable to taxation (capital stock tax). Herein the Hazelton-Wilkes-Barre Case (251 Pa. 6) is parallel; under its facts that company would not be liable for a capital stock tax. We held it was doing business within the State and liable, under the Act of 1885, to make a report of corporate loans. It is somewhat like Colonial Trust Co. v. Montello Brick Works, 172 Fed. 310, and Washington-Virginian Ry. v. Real Estate Trust Co., 238 U. S. 185, where the registration was required with no tangible property to tax. Attention is directed to the Act of 1919 on the subject of loan tax. The Gulf Oil is in like situation, doing business within the meaning of the loan report and registration act, while its capital stock is not liable to a state tax through lack of taxable value.

It follows that a mere holding company, chartered in another state solely for the purpose of "holding the stock of subsidiary companies," as the Gulf Oil Corporation is, can have no property in this State which is "liable to taxation," under our laws relating to the capital stock tax, and hence such a tax cannot be properly levied against it, though it may have personal property here which is liable to the personal property tax.

If it is not so liable, the Act of 1913 applies and appellee must pay a personal property tax. "The defendant below being a citizen of this State, it is clear he is subject personally to its power to tax, and that all his property accompanying his person, or falling legitimately within the territorial jurisdiction of the State, is equally within this authority. The interest which an owner of shares has in stock of a corporation is personal. Whithersoever he goes, it accompanies him, and when he dies his domicile governs its succession": Mc-

Keen v. Northampton County, 49 Pa. 519, 525; Dupuy v. Johns, 261 Pa. 40, 46.

If the last stated conclusion is not correct, we permit resident holders of valuable shares to escape taxation on the ground that the company whose shares they hold, though stripped of all taxable value so far as its stock is concerned, with no assessable capital, is merely doing business. As first stated, the tax policy is an effort to reach all investments of capital in corporations, except where relieved, as indicated.

The Commonwealth here is not deprived of any tax, and the counties secure that which the legislature intends. In the present case, Gulf Refining Company must account for all the property taxable in Pennsylvania, and it has always so responded. Neither Gulf Refining Company nor its shareholders are injured; Gulf Oil will pay no capital stock tax though accounting for loans, and though its shareholders may not secure the same immunity as subsidiary's stockholders; they stand in a different sphere and are placed on a par with all other investors in the stock of foreign corporations not taxable for state purposes. Until the legislature adopts a different system of apportionment or division of stock value, one representing capital invested in the Commonwealth and the other outside, we may expect difficult problems presented, and in some cases inequality; but, if the bars are thrown down, as urged by appellee, personal property tax in Pennsylvania, so far as it relates to foreign investments, will be a dead letter.

One other question presents itself, and it forcibly illustrates what may be done to escape this personal property tax by means of a very small state tax, illegally assessed. The auditor general, who received and filed a report of the Gulf Company, assessed against it what plainly is a mere nominal tax on capital stock. It is here contended that the auditor general's report, fixing liability to tax, is conclusive, and the court cannot go behind it. The legislature has seen fit to set up two

taxing tribunals, each having equal powers, to determine a fact, to wit, a corporation's liability to a tax on its capital stock. The auditor general made an assessment or finding; the county, the other cotaxing authority, is in no position to appeal from this action. It could not be heard as a party in interest. If the auditor general's reports are to be received as conclusive, as that official is diligently looking after the state's revenues, one can easily see where the counties might suffer. On the other hand, it would be intolerable to have the auditor general's action subjected to an attack, or set aside indiscriminately, by the sixty-seven county-taxing officials. The court below was in error in holding the report conclusive under the facts in this case. Generally speaking, the reports of the auditor general are not only prima facie evidence, but conclusive, except in case of fraud, legal or constructive, or where the face of the report exhibits an assessment of tax contrary to law, or where the officers of the company admit a situation that makes it nontaxable. The cases relied upon relate solely to situations where efforts were made to resist the collection of a tax assessed by the auditor general, and do not reach the facts in this case. Here, all facts necessary to a decision of the case were sworn to by the secretary of the company, and it naturally followed that some explanation had to be made, when the corporate purpose of the holding company, filing the report, was considered. The auditor general accepted the report, as is usual in that office as to the reports of all companies which make returns. In adjusting and deciding questions of the character which arise in setting a capital stock tax, the auditor general hears one side only, and is often not presented with the real problems in dispute; but, even so, we have sufficient admissions in the present record to show the facts before indicated, and upon them we base our decision,—we are not deciding anything about the right to file a consolidated return.

We now conclude that all the tangible property here involved belongs to the underlying company and all the intangible property is referable to the home of the reporting company, and this corporation, though doing business in Pennsylvania, has no property on which a value may be placed so as to compute a value on its capital stock; consequently, the corporation is not liable to a capital stock tax.

A penalty of fifty per cent for failure to file a personal property return was added, as provided by law. The failure to file the report in this case was due to an honest misconception of the law relative to our taxing statutes. While it is not within our power to relieve appellee from the penalty imposed, we think the board of revision should take this matter into consideration and grant relief as to this item. The county's desire is not to punish but to have the law definitely settled.

The order of the court below is reversed, the decision of the board of revision is reinstated; the appellee to pay the costs.

CONCURRING OPINION BY MR. JUSTICE SIMPSON:

Upon the assumption that Dupuy v. Johns, 261 Pa. 40, is not to be overruled (and this seems to be the view of a majority of the court, including the three dissenting Justices), I concur in the order of reversal; not only because this court is "bound to prevent the abuse of its own decision" (Com. v. Moir, 199 Pa. 534, 561), but also for the reasons set forth in the opinion prepared by our Brother KEPHART, more particularly because the Gulf Oil Corporation,—the value of whose shares of stock appellee seeks to exclude from consideration in fixing the tax due by him,—has no legal power to do anything except to hold the "stocks of subsidiary companies." The place of taxation of such intangible assets is the domicile of the owner, whether a corporation or an individual, unaffected by the fact that the stock certificates may be in another jurisdiction; for,

after all, they are only evidences of ownership, their location may change from day to day, and thus, unless the domicile of the owner is fixed as the place where they are to be taxed, they may readily escape all taxation.

That they have been taxed, in whole or in part, is a matter of no moment in deciding the question of exemption, for the point at issue is not whether a tax has been assessed and paid, but whether the corporation was "liable" to pay it; and when, as here, this issue is determinable by the charter itself, interested third parties have a right to require the courts to consider and decide it, irrespective of any previous determination by some nonjudicial taxing body. Any other conclusion would result in the gravest injustice, for large corporations could arrange to do a dollar's worth of business in this State, or own a chair or table here, and by paying to the State a tax on this basis could exempt all their shareholders from personal liability on many million dollars' worth of stock.

In my judgment, however, Dupuy v. Johns, supra, is wrong in principle and should be overruled. In construing statutes relating to taxation, three rules must be steadily borne in mind: (1) No tax can be collected in the absence of a provision clearly imposing it upon the class to which the taxpayer or his property belongs; (2) Where the taxpayer or his property is within the general language of the statute imposing the tax, all exempting provisions are to be strictly construed against the claim for exemption; (3) Provisions relating either to the imposition of or exemption from a tax, are to be so construed as to give effect, as nearly as reasonably may be, to the common law duty to tax equitably and ratably all those within the given class, this subject being partially dealt with also in article IX, section 1, of our Constitution. It was by giving no effect to rule (3) and mistakenly applying the principle embodied in rule (1) instead of that in rule (2) (the last two being often confused with each other, though in no

way conflicting), that the exempting provision under consideration in Dupuy v. Johns, was held to relieve appellee from the tax therein sought to be collected.

The facts in that case, as taken from the opinion of the court, were, "The plaintiff is a resident of Pittsburgh; in his return for the year 1916 he failed to include certain shares of the preferred stock of the Crucible Steel Company of America, then owned by him. The concern in question is a New Jersey corporation, engaged in making steel and products thereof, the value of its total capital stock being approximately $75,000,000; of this amount, $14,000,000 is employed in Pennsylvania, and all except $29,000 exclusively in manufacturing. The company is licensed to do business in this State, and in 1916 it paid a capital stock tax on the before-mentioned $29,000 amounting to $169.17." The portion of the Act of June 17, 1913, P. L. 508, 509, under which the liability was sought to be established in that case, provides that residents of Pennsylvania shall be liable to pay a tax upon, inter alia, "all shares of stock in any bank, corporation, association, company, or limited partnership, created or formed under the laws of this Commonwealth or of the United States, or of any other state or government, except shares of stock in any bank, corporation or limited partnership that may be liable to a tax on its shares or its capital stock for state purposes under the laws of this Commonwealth, or relieved from the payment of tax on its shares of capital stock for state purposes by the laws of the Commonwealth." We held that, under this excepting provision, the payment of the $169.17 relieved from taxation all Pennsylvania holders of any part of the $75,000,000 of stock, although our citizens who held stock in other corporations, domestic or foreign (save as exempt because employed in manufacturing, etc.), were liable to a tax on the full value of their shares, even though no part of the corporation's tangible assets was located in this State. In my opinion appellee, in that case, should have been held liable to

pay a tax upon 61/75 of the value of his shares, and exempted from 14/75 thereof.

It will be noted the exempting provision is: "except shares of stock in any......corporation......that may be liable to a tax on its shares or its capital stock for state purposes......or relieved from the payment of tax on its shares or capital stock for state purposes." If the provision quoted means, as Dupuy v. Johns says, that *any* payment, no matter how small, relieves the stockholder from the tax, then the employment here of *any* part of the corporation's assets for manufacturing purposes, no matter how small, must have a like effect, and the holders of stock in foreign corporations, but a trivial part of whose activities are in the line of manufacturing, will wholly escape, though, under substantially similar language, the holders of stock of domestic corporations will escape only pro rata, that is, to the extent the assets are used in manufacturing and not beyond that. This is not only discriminatory and inequitable, but is also in direct antagonism to rule (2), above stated, and should not be tolerated, unless there is no reasonable way of escape therefrom. It is true stockholders in domestic corporations do not directly pay the tax on their shares, but the corporation pays it for them, and not as a tax on its own assets,—a fact too often overlooked in considering questions arising under these statutes. If "any" or some similar word had been used in the Act of 1913, when referring to the payment or relief from payment of the tax, we might perhaps be required to construe the exempting provision as was done in Dupuy v. Johns, despite the inequality occasioned thereby; but no such word appears, and hence under rule (2), and indeed upon the principle that the legislature will be presumed to know and adopt the construction placed by this court upon similar language in previous taxing statutes, the exemption should be limited accordingly.

A like conclusion was reached in construing the acts of assembly which exempted "institutions of learning, benevolence or charity, with the grounds thereto annexed and necessary for the occupancy and enjoyment of the same, founded, endowed and maintained by public or private charity," for there we exempted fractions of buildings directly used for the purposes of the charity, and taxed other parts thereof from which a revenue was received: Young Men's Christian Association v. Donohugh, 7 W. N. C. 208, approved in Phila. v. Barber, 160 Pa. 123, 128; Board of Home Missions, etc., v. Phila., 266 Pa. 405. This conclusion was reached upon equitable grounds and not because the statutes expressly so provided; no reason exists why like equitable consideration should not control the exempting provision in the Act of 1913.

If the reasons thus presented were allowed to prevail Dupuy v. Johns would be overruled, and this would result in a reversal of the order of the court below and a restatement of the tax, appellee being held liable for the greater part but not all of the amount claimed. It would also result in that equality of taxation, which necessarily is equity; would give full effect to the action of the state authorities in so far as they assessed a tax for state purposes; would destroy the method which may now be employed, whether by collusion or otherwise, to escape liability under these taxing acts; would remove all the difficulties suggested in the dissenting opinion; and would save the State and her citizens from the dire results which it is supposed may flow from the conclusion reached by the court.

DISSENTING OPINION BY MR. JUSTICE SADLER:

The Gulf Refining Company is a registered foreign corporation, doing business within the Commonwealth, and has been so engaged for many years. The Gulf Oil Company was organized at a later date and received a charter from the State of New Jersey. Its purpose was

the holding of stocks of subsidiaries engaged in producing, transporting, manufacturing and marketing petroleum and petroleum products, and in pursuance of the powers conferred became the owner of all of the stock of the first named corporation, except qualifying shares of directors. The chief office was in New Jersey, as required by the law of that state, but its actual place of business was in the City of Pittsburgh, where all but one of its directors live, the securities of the company are deposited, banking done, accountings had, and from which point its corporate affairs are directed. Five floors of a large building, the Frick Annex, are occupied for the carrying on of these activities, as I understand the testimony. The office furniture is owned by it; private telegraph lines, leased in the name of its subsidiary, partly within this Commonwealth, are operated by it for communicating on company matters. Though the plants and refineries stand in the name of the subsidiary corporation, the actual control of the various properties is by the Gulf Oil Company, which was duly registered under the Act of June 8, 1911, P. L. 710, and authorized to do business in Pennsylvania, having paid the proper fees and bonus charges. As required by law (Act June 1, 1889, P. L. 420, section 20; Act June 2, 1915, P. L. 730; Act July 15, 1919, P. L. 948), it filed with the auditor general, for taxation purposes, reports of capital stock and loans for 1920. Had this not been done, a penalty would have been collectible, for every corporation which has been registered is required so to do. Act April 14, 1905, P. L. 166. The capital stock was appraised and a charge of $11,744.10 was duly assessed by the proper officers; the sum levied was paid, as was a tax of $12,199.25 on corporate loans.

Stock of the Gulf Oil Company was owned by residents of Allegheny County, and the local board of revision included the worth of these shares in fixing the taxable value of the personal property of James D. Callery. This action was set aside on appeal to the com-

mon pleas, the court holding that the corporation was doing business within the Commonwealth, and liable to state taxation, and came within the exception found in section 1 of the Act of June 17, 1913, P. L. 507, permitting the collection of certain taxes by counties, but reserving to the State definite sources of revenue, which reads, "except [upon] shares of stock in any bank, corporation or limited partnership that may be liable to a tax on its shares or its capital stock for state purposes under the laws of this Commonwealth, or relieved from the payment of tax on its shares or capital stock for state purposes by the laws of the Commonwealth." It was concluded the capital stock of the oil company was within this proviso, and the holder of its shares within Pennsylvania was exempted from local assessment thereon. The correctness of the decision rendered is now challenged.

Prior to the act referred to, personal property taxes were collected for the State, the counties having returned to them a certain proportion of the amount received and forwarded. By that legislation, the former gave up to the latter the right to all receipts in certain cases, retaining to itself however the sums obtained from corporations in the cases excepted by section 1 and fixed by section 17: Provident L. & T. Co. v. Klemmer, 257 Pa. 91. The question as to the property intended to be included in the respective classes,—in one of which the county has an interest, and in the other not,—has caused the present contention.

It will be conceded that if the Gulf Oil Company was doing business in Pennsylvania, and was subject to taxation by the Commonwealth, and paid such as was levied, the resident holder of its capital stock would not be subject to local assessment. This was plainly decided in Dupuy v. Johns, 261 Pa. 40, and the principle there set forth is, in our opinion, applicable here. The majority decision would, however, distinguish this case on the ground that the Crucible Steel Company,—the for-

eign corporation there considered,—was engaged in manufacturing in Pennsylvania, and therefore taxable on property not exempted by statute; whereas the Gulf Oil Company was not so employed. The latter is a holding company, and has registered and paid the bonus fees charged by the Commonwealth to secure the privilege of acting here. All its directors but one, the management and the officers, accounting department and bank deposits are located within the State. Bills and accounts receivable are payable in Pittsburgh, though this does not necessarily indicate that capital was employed within the State: Com. v. Ellis Co., 237 Pa. 328. The actual manufacturing and selling of the petroleum is conducted in the name of the subsidiary company, the stock of which is held by it, and for which purpose it was duly chartered. What was said in Com. v. Westinghouse Air Brake Co., 251 Pa. 12, would seem to meet such a situation: "It holds the plant [of the refining company] through the medium of the stock of that company. It thereby became none the less the real owner of the plant. It owns the plant and the evidence of its ownership is the shares of stock which it holds in the corporation." Suggestion is made that the present case differs in that the Westinghouse corporation (the holding company), was the real operating body, the subsidiaries constituting but a small part of the whole, whereas here the refining company had greater and broader powers in Pennsylvania than the parent corporation. The difference in the chartered purposes, as I understand, is that the refining company is authorized to manufacture and sell, whereas the oil company is chartered to hold the stock of the company so engaged. Even if there be a distinction such as suggested, the principle recognized in the authority last referred to would still be applicable.

It is undoubtedly true that the foreign corporation is not to be held engaged in business merely because of ownership of shares in the domestic company: Com. v.

Standard Oil Co., 101 Pa. 119. But where the acquisition of the stock forms one of the direct objects of its creation, a different rule applies: Colonial Trust Co. v. Montello Brick Works, 172 Fed. 310; Central Life Sec. Co. v. Smith, 236 Fed. 170; Groel v. United Elec. Co., 69 N. J. Eq. 397, 60 Atl. 822. This distinction was recognized in Com. v. Railroad Co., 251 Pa. 6, 10, where the foreign corporation was engaged "in the exercise of one of the purposes for which it was incorporated, namely, buying and holding the stock and bonds of certain Pennsylvania corporations, and is thus in effect operating these companies as one of its objects of incorporation." Though the two associations remain as separate entities, the substance of the relationship is the matter for consideration by the court: S. G. V. Co. v. S. G. V. Co., 264 Pa. 265; Kendall v. Klapperthal Co., 202 Pa. 596. This is especially true when, as here, the administration and construction of taxing statutes is involved: Com. v. Westinghouse Air Brake Co., supra; Western Union Tel. Co. v. Kansas, 216 U. S. 1. The refining company maintains its corporate existence, yet its operations are conducted by the oil company, and, if it were necessary, it might well be said, under the authorities, that this constituted an employment of capital within the State, but it is not essential to so hold to solve the situation as presented by this record.

The evidence justifies the conclusion that the oil company was engaged here, irrespective of the operation of the works of the refining company; certain independent activities within the Commonwealth have already been pointed out, which bring the present case within the ruling of this court in Com. v. Railroad Co., 251 Pa. 6. I cannot agree, as stated in the majority opinion, that the corporation is "doing business" within the purview of the registration and corporate loan acts, and not those regulating taxes on capital stock. It is said that this distinction is justified because a foreign corporation is liable only under the statute regulating state

assessments, when it is both "doing business and liable
for taxation"; and it is suggested that the second con-
dition does not exist here. To so assert, does not seem
to me to be borne out by the evidence. Without elabo-
ration, it may be noted that the tangible assets in Penn-
sylvania are listed in the annual report at a very con-
siderable sum. This item includes real estate held in
the name of the refining company, but is not so limited.
According to my understanding of the testimony, it
certainly embraces capital employed in the ownership
of the business equipment of the oil company, and it
operates telegraph lines, though it leases them in the
name of its subsidiary. The exact valuation of each
is not set forth, but that is immaterial; for if there is
any tangible property here not exempted by law, or as
to which deduction must be made, the company is sub-
ject to taxation. This has been held when the only as-
sets of the foreign corporation within the State were
office furniture, and certain appliances for loading and
unloading vessels, the valuation of which did not exceed
$11,000, a small fraction of the total capital of the
company then the subject of consideration: Com. v.
Clyde Steamship Co., 268 Pa. 278. The fact that the
amount of taxable assets is small makes no difference,
the question being whether it has any capital here in
service, making it liable to some levy. On the report as
filed, the averments in which are not gainsaid, the tax-
ing officials of the State were in duty bound to levy a
capital stock tax. If they had not done so they would
have disobeyed the mandate of the law. The thought
expressed that such a ruling might work injustice to the
community in exempting the holdings of stocks of for-
eign corporations owned by residents, when the company
pays but a trifling sum to the State, is satisfactorily an-
swered by the present Chief Justice in Dupuy v. Johns,
supra, at page 5. It follows from what has been said
that, in my opinion, the Gulf Oil Company was doing
business within the State, and liable to taxation, and

the auditor general properly made assessment and collected the sum found to be due. If his action was justified, then the court below was right in holding the valuation of the stock in the hands of the resident holder to be void, and as a result necessarily set it aside.

For another reason the judgment, in my opinion, should be affirmed. Reports required by law of all registered foreign corporations were filed, the taxes assessed paid, and no appeal was taken. The action of the state officials necessarily involved findings of fact that the corporation was "doing business and liable to taxation," and this is ordinarily conclusive. Of course, if an assessment is made illegally by the taxing authorities, or if there have been fraudulent practices, a different situation arises; but these questions are not presented here. It is unnecessary to refer to other authorities than Stratford v. Franklin Paper Mills Co., 257 Pa. 163, and the cases there cited, to support this proposition.

It is suggested that a different rule should be applied in circumstances such as now appear, for the reason that the county authorities, whose interests may be adversely affected, are not parties to the settlement. Whether they could intervene in such a proceeding and secure a review of a prejudicial ruling it is not necessary to determine. Prior to 1913, the collection of all personal property tax was primarily for the benefit of the State, though it returned to the county a portion of the sum received, and the manner of correcting improper assessments was fixed by various statutes. In that year the legislature saw fit to give up a further portion of the revenues of the State; but it did not then, nor has it since, provided a different or additional tribunal for the adjustment of disputes. It did not cede the power, which the State then possessed, to determine through its own officials what property was subject to contribution in support of the Commonwealth; by a failure to so grant, the right was reserved. All corporations registered were at that time bound to make reports for con-

sideration by the officials named, and if any failed to do so, it was penalized. This duty to submit annual statements to the central authority for taxation purposes has been reiterated since by two legislatures.

In the present instance, the company reported as required by law. The proper officials determined, from the facts submitted, the question of liability for tax, and found affirmatively; otherwise a nominal charge would have been made. This action, subject to appeal, binds all parties, and is not reviewable by some other body, not granted such jurisdiction by statute. Pennsylvania Bank Assignees' Account, 39 Pa. 103. The legislature may provide for returns of corporations to counties, and permit the making of independent investigations so that each may determine whether the stock held by residents is subject to local taxation; but no such power has been given. The effect of the majority opinion is to hold that the oil company is not liable to taxation for state purposes on any part of its capital stock, and that foreign corporations, such as it, organized as holding companies, can operate here, exempt from state taxation so far as capital stock is concerned. The far-reaching consequences of so holding may be of great moment to the Commonwealth so far as its revenues are involved; it can well be surmised that the gain in collections to the counties will be far overbalanced by the loss of revenue to the State.

Express provision does appear for determining corporate liability by named officials of the Commonwealth with a right of review. "When the law has confided to a special tribunal the authority to determine certain matters arising in the course of its duties, the decision of that tribunal, within the scope of its authority, is conclusive......The right to impose taxes for the support of the government, in all its departments, state, county or municipal, is the prerogative of the legislature. Subject to the restriction of the Constitution, that power may be exercised by such agencies as the legislature has

established for that purpose": Erie v. Reed, 113 Pa. 468, 476. The county is an arm or agent of the State, and has been called a quasi, as distinguished from a municipal corporation: Bucher v. Northumberland County, 209 Pa. 618. In neither case can powers be exercised where not granted, or which are withheld, though in many instances the latter is given authority to legislate upon definite subjects. What has been declared as to extent of rights of municipalities is equally applicable to counties, with reference to a subject like taxation, where certain privileges have been conferred. In Com. v. Moir, 199 Pa. 541, we said, in part: "Municipal corporations are agents of the State, invested with certain subordinate governmental functions for reasons of convenience and public policy. They are created, governed and the extent of their power determined by the legislature, and subject to change, repeal or total abolition at its will. They have no vested rights in their offices, their charters, their corporate powers or even their corporate existence. This is the universal rule of constitutional law, and in no state has it been more clearly expressed and more universally applied than in Pennsylvania..... The fact that the action of the State towards its municipal agents may be unwise, unjust, oppressive or violative of the natural or political rights of their citizens, is not one which can be made the basis of action by the judiciary."

A duly constituted state body has been provided to pass on the necessary questions of fact, involving the taxation of corporations, foreign and domestic, and only one; any other situation would be unfortunate. Unless fraud is shown in the finding made, or the record shows on its face lack of authority to assess,—it does not in the present case,—or that the charge made is merely nominal, there being no taxable assets, as appears in McMullin's Estate, 272 Pa. 284, the findings of fact necessarily implied by the assessment are conclusive. To permit the board of revision of each of the sixty-

seven counties to hold hearings to determine whether foreign corporations, whose stock is held by local residents, are doing business and liable to tax, notwithstanding an affirmative finding by the auditor general, will not only end in confusion as to the results reached, but in great hardship to the holders, who may be called upon to defend their right to exemption by the production of evidence difficult to secure, as well as to the companies, whose officers may be subpœnaed to appear in many different places to explain the manner of conduct of their affairs. To my mind this will be the result of the decision of the majority, and does not find justification in our authorities.

For the reasons stated, I would affirm the judgment.

Justices FRAZER and SCHAFFER concur in this dissent.