## City of Erie *versus* Reed's Executors.

1. When the law has confided to a special tribunal the authority to determine certain matters arising in the course of its duties, the decision of that tribunal within the scope of its authority is conclusive.

2. The Act of February 25th, 1870, P. L., 242, confides to the councils of the city of Erie the final determination of the fact whether or not certain real estate within said city is rural, not having the benefit of lighting, paving, police, water, etc; that it may be assessed as farm land and rated as such.

3. If the discretion to determine whether or not certain real estate within the city of Erie, confided by law to the councils of said city be abused, a court of equity will restrain the perpetration of a palpable wrong arising therefrom.

4. All ordinances passed prior to the Act of April 30th, 1885, P. L., 11, levying taxes in any of the cities of the third, fourth and fifth classes, in amount not exceeding twenty mills in any one year, are by said Act made valid.

5. The right to impose taxes for the support of the government, in all its departments, state, county or municipal, is the prerogative of the legislature. Subject to the restriction of the Constitution, this power may be exercised by such agencies as the legislature may establish for that purpose.

April 29th, 1886. Before GORDON, TRUNKEY, STERRETT, GREEN and CLARK, JJ. MERCUR, C. J., and PAXSON, J., absent.

ERROR to the Court of Common Pleas of *Erie county :* Of January Term 1886, No. 326.

Debt, by the city of Erie against Harriet W. Reed, executrix, and Charles M. Reed, executor and trustee of the estate of Charles M. Reed, deceased, to recover for balance of city tax levied upon the property of said estate for the years 1879, 1880, 1881, 1882. Pleas, *nil debet*, payment with leave.

The facts, as they appeared on the trial before CHURCH, P. J., sufficiently appear in the opinion of the Supreme Court.

On the trial, the plaintiff presented the following points:

1. That, under the provisions of the Act of February 25th, 1870, it is made the duty of the assessors to decide what properties in agricultural or rural districts, used for purposes of cultivation or farming, receive no benefit from lighting, paving, police, water, and other expenditures belonging exclusively to the built up portions of said city, and the decision of said assessors in relation thereto is final and conclusive upon all parties.

Answer. This, under the evidence of this case, we answer in the negative. (First assignment of error.)

[City of Erie *v.* Reed.]

2. That if the jury find from the evidence in the cause, that the assessor did not distinguish in his return of assessments that the lands of the defendants in that part of the Fifth ward of the city of Erie, formerly known as South Erie, had not the benefit of any of the privileges aforesaid, such as lighting, paving, etc., then said lands are subject to a full rate of taxation, and their verdict must be for the plaintiff.

Ans. This point is answered in the negative in the view we take of this case. (Second assignment of error.)

3. That if the property of the defendants, taken into the city of Erie from the borough of South Erie, enjoys the privileges of lighting, paving, police, water, and other expenditures belonging to the built up portions of said city, or any of said privileges, then said lands are not entitled to exemption from any part of the taxes in suit, and the verdict of the jury must be for the plaintiff.

Ans. This point is answered in the negative. It undertakes to make a distinction between the lands in the borough of Millcreek and South Erie, and the whole theory of the Court is that there should be no distinction between them, provided they are farming lands and used for agricultural purposes. (Third assignment of error.)

4. That the burden of proof is upon the defendants to show that the lands in question are entitled to exemption from the payment of any part of the taxes assessed; and the defendants having offered no evidence of any such exemption as to the lands formerly in the borough of South Erie, the verdict of the jury must be for the plaintiff for the amount in dispute.

Ans. The first part of this point is answered in the affirmative. That the burden of proof is on the defendant, etc. The latter part of it we decline, but leave it for you to determine, not whether or not they have offered no evidence, but whether the lands in South Erie are farming lands and used for farming purposes, and thence entitled to the half rate. (Fourth assignment of error.)

5. That, under all the evidence in the cause, the plaintiff is entitled to recover the amount claimed by it, as shown by the evidence offered.

Ans. This is answered in the negative. (Fifth assignment of error.)

The defendants presented, *inter alia*, the following points:

2. If the jury find from the evidence that the land is farming land upon which the taxes sought to be recovered in this suit were levied, the defendants are entitled to the abatement allowed on other farming lands in the city of Erie.

Ans. This point is answered in the affirmative. (Sixth assignment of error.)

3. That, under the ordinance of the city of Erie, approved February 4th, 1882, allowing an abatement on farming lands for the year 1881, and each and every year thereafter, of one half the rate assessed on other lands, applies to the farming lands of the defendants, and the defendants are entitled to such abatement on the lands the jury shall find are farming lands.

Ans. This point is answered in the affirmative. (Seventh assignment of error.)

4. That, prior to the year 1885, the city of Erie had no authority by law to levy or collect a greater rate than ten mills on any land in the city of Erie, and if a greater rate was assessed during the years 1879, 1880, 1881 and 1882 it was illegal and void, and the excess cannot be collected.

Ans. This is a case of first impressions with me. Clause 1, of section 20, of the Act of 1874, authorizes the city councils to levy and collect taxes for general revenue purposes not to exceed ten mills, &c. Clause 33 of the same section provides for the assessment and collection of taxes not exceeding one per cent. on the valuation, for the payment of loans to support the city government. For general revenue purposes they were allowed to collect ten mills; and for the payment of loans to support the city government and make the necessary improvements in the city, ten mills more. Whether the taxes sought to be collected here—if they were for general revenue purposes—they had no right to levy more than the ten mills under the Act of 1874; and hence, this point is answered in the affirmative. That, prior to the year 1885, the city of Erie had no authority to collect and levy a greater rate than ten mills in the city of Erie, and if more was levied it was void, and cannot be collected. This is answered in the affirmative. That they had a right only to collect ten mills for general purposes, and ten mills for loans, &c., to support the government of the city, and in the absence of any evidence of what this was intended for, we say they had no right to levy and collect more than the ten mills. (Eighth assignment of error.)

In the general charge the Court addressed the jury, *inter alia,* as follows:

[The only question is whether the farm sought to be assessed, consisting of about 100 acres in Millcreek township, and partially in South Erie, was agricultural or farming lands, as mentioned in the Act of Assembly. If it was farming lands, and used and occupied as such in good faith, your verdict would be for the defendants, if you had found they had

paid one half of the city tax that the city councils had levied. That is a question of fact. I do not intend to go over the evidence in the case. It was testified to by Charles M. Reed that it was used in 1879, 1880, 1881 and 1882 as farming lands, and for that purpose only; that he had never laid it out in lots. That is all the question for you to determine. I answered some points on both sides, and the question of law I decided simply left you to determine the simple fact whether this was farming lands, and after you have agreed upon that, you have nothing more to do. The law is for the Court, and if we are wrong the Supreme Court will settle it. The map was sent out, and although it was laid off in five acre lots, it was laid off rather upon paper than on the ground, but it had been used by the estate as a farm—making twenty or more lots. And I say also that there was no distinction to be made between the farm lands in Millcreek township and South Erie, provided you find that it is farm lands; that the farm lands in South Erie had as much right to be assessed at one half as though it was in Millcreek township.] (Ninth assignment of error.)

[I think, therefore, that the legislature in 1874, when it gave the right of a common law action to a city seeking to collect a tax from one of its property owners, it gave that property owner some right to defend on equitable principles against the payment of taxes.] (Tenth assignment of error.)

Verdict for the plaintiff in the sum of $172.31, and judgment thereon; whereupon the plaintiff took this writ, assigning for error the answer of the Court to the plaintiff's points, to the defendant's points, and those portions of the general charge above set out.

*Theo. A. Lamb,* City Solicitor, for plaintiff in error.—1. The Act of February 25th, 1870, P. L., 242, clearly prescribes the tribunal that shall decide what lands shall be assessed as farm land, to wit—the assessor. It does not say that the county commissioners, the judge of the Court of Common Pleas of Erie county, or the judges of this Court, shall determine that question, but it does say that the assessors shall do so. Moreover, it does not provide for an appeal from his decision, and in the absence of any such provision we submit that the decision of the assessor is conclusive. The rule has been stated by this Court as follows: Where the general power to assess exists, the proper remedy for illegal taxation is by appeal to those to whom the appeal is required to be taken, and if none be given, neither the Common Pleas nor this Court can revise the judgment of the tax officers: Clinton School District's Appeal, 56 Pa. St., 315; Stewart *v.* Maple, 70 Id., 221; Kim-

ber *v.* Schuylkill Co., 20 Id., 366; Hughes *v.* Kline, 6 Casey, 227; Wharton *v.* Birmingham, 1 Wr., 371; Johnson *v.* Townsley, 13 Wallace, 72.

This Court has said: It matters not that the Court may question the wisdom of the law. Taxation is not a judicial but a legislative function, and courts cannot interfere therewith, or revise it, except when clearly warranted by the constitution: Appeal of Hewitt *et al.*, 88 Pa. St., 55; Kelly *v.* Pittsburgh, 85 Id., 170; Sharpless *v.* The Mayor, 9 Harris, 147; Speer *v.* Blairesville, 14 Wr., 150.

Neither does it matter that the imposition of a tax is a hardship, nor that the tax is unjust or unequal, still the courts are powerless to interfere: Kelly *v.* Pittsburgh, 85 Pa. St., 170; Weber *v.* Reinhard, 73 Id., 370; Kirby *v.* Shaw, 19 Id., 258; Cooley on Taxation, 528–540.

3. The right to levy and collect taxes is a necessary incident of every government, essential to its very existence, and is never presumed to have been surrendered or abandoned except by clear words, and for what is deemed, at the time, by the law-making power an adequate consideration. The surrender cannot be extended by implication, and if one tax is expressed it cannot be presumed to extend to others. No power to tax need be reserved; it exists and remains unless expressly yielded: Jones *v.* Commonwealth, 69 Pa. St., 137; Easton Bank *v.* Commonwealth, 10 Id., 442–450; Erie R. R. Co. *v.* Commonwealth, 66 Id., 84; Commonwealth *v.* Bird, 12 Mass., 443; Cooley on Taxation, p. 540, note, and 144–151.

Exemptions, no matter how meritorious the cause, are of grace, and must be strictly construed: Providence Bank *v.* Billings, 4 Pet., 514; Bank *v.* Commonwealth, 7 Harris, 144.

If the tax was not authorized when levied, the Act of April 30th, 1885, P. L. 1885, p. 11, fully validated the same, and the Court should have so stated. The latter part of the first section is as follows: And all ordinances, heretofore passed, levying taxes in any of the cities of the third, fourth and fifth classes, in amount not exceeding twenty mills in any one year, are hereby made valid.

This Act was within the power of the legislature: Hewitt's Appeal, 88 Pa. St., 55; Grim *v.* Weissenberg School District, 57 Id., 433; Lilly *v.* Underwood, 10 S. & R., 97; Adle *v.* Sherwood, 3 Whart., 281; Hepburn *v.* Curtis, 7 Watts, 300; Schenley *v.* Commonwealth, 12 Casey, 29.

We also submit that the fact that the legislature authorized an action of debt to be brought for taxes unpaid, did not permit the defendants to set up any defence that would not have been available in any other form of procedure. To permit this would be to substitute the opinion of the Court for that

of the legislature. Equally true is it that the question of the justice or injustice of the tax is one with which the courts have nothing to do : Kelly *v.* Pittsburgh, 85 Pa. St., 170 ; Weber *v.* Reinhard, 73 Id., 370 ; Kirby *v.* Shaw, 19 Id., 258.

*F. F. Marshall,* for defendant in error.—The plaintiff refusing to allow the abatement of one half the taxes as allowed other lands of this class in the same vicinity, is, we think, a plain violation of Article IX., section 1, of the Constitution of Pennsylvania, which provides " that all taxes shall be uniform upon the same class of subjects within the territorial limits of the authority levying the tax, and shall be levied and collected under general laws." We deny that the city has any power by ordinance or otherwise to distinguish in the matter of taxation the same class of property, and collect from one part double the amount of taxes that it does from the other. The defendants own one hundred acres of land in one body, used and occupied as a whole for one purpose : can the city discriminate and say two thirds of this land shall pay double the amount of taxes that the other third pays ? It can hardly be possible that such arbitrary power of local taxation, so palpably unjust, will be upheld by the Court : Appeal of the Protestant Orphan Asylum *et al.*, 17 W. N. C., 47 ; Hamett *v.* Philadelphia, 15 P. F. S., 146 ; Washington Avenue, 19 Id., 364 ; *In re* Saw Mill Run Bridge, 4 Norris, 163.

When the legislature gave the new remedy to collect taxes by an action of debt, it certainly did not intend to deprive the debtor of all legal or equitable defence he might have to the demand, just or unjust, right or wrong.

We contend that when the councils allowed and directed by ordinance, that the rural portions taken from Millcreek township should have an abatement of one half the rate assessed, that all the rural lands brought into the city by the extension of its boundaries, under the Act of February 25th, 1870, are entitled to the same abatement; that they must all be treated alike, within the same territorial limits. There can be no doubt of this Court having the power to correct the wrong, whether it is that of the assessors or the councils. It was held by this Court in the case of Saltsman *et al. v.* The City of Erie, under this same Act that, " when city councils are, by Act of Assembly, directed ' to so discriminate in laying the city taxes as not to impose on the rural portions those expenses which belong exclusively to the built-up portions of said city,' they are bound to apply a proper and equitable rate in levying the taxes, and within a sound exercise of the discretionary power, a court of equity will not interfere. But where the power is abused and the discretion wholly illusory

and unjust, the powers of the Court are adequate, and they will correct such a palpable wrong:" Saltsman *et al. v.* City of Erie, 9 Pitts. L. J., N. S., 55.

Mr. Justice CLARK delivered the opinion of the Court, October 4th, 1886.

This action of debt is brought, under the Act of 1874, by the city of Erie, against the executors and trustees of the estate of Charles M. Reed, deceased, to recover certain taxes assessed against the defendants' real estate, situate within the present city limits.

By an Act of Assembly, approved February 25th, 1870, P. L., 242, the limits of the city of Erie were extended to include the borough of South Erie, and a part of Millcreek Township. The defendants are owners of about one hundred acres of land, which, prior to the extension of the city limits, were situate, partially within the borough of South Erie, and partially in Millcreek Township, immediately adjoining the old city.

The city of Erie and also the borough of South Erie were at the time considerably indebted, while the township of Millcreek was free from all indebtedness whatsoever. In relief of the rural portions of the land, included in such extension, it was, by Act of Assembly, and city ordinance, provided as follows:—Act, 25th February, 1870, sec. 9:—The council of said city shall so discrimate in laying the city taxes, as not to impose upon the rural portions those expenses which belong exclusively to the built up portions of said city; for which purpose the assessors shall distinguish in their returns what properties are within agricultural or rural sections, not having the benefit of lighting, paving, police, water and other expenditures, exclusively belonging to said built up portions of said city; and lands within said agricultural or rural districts, used for the purpose of cultivation or farming, and not having any of said privileges, shall be assessed as farm land and rated as such.

Sec. 12, May, 1871:—That so much of that portion of the city of Erie as (by the Act aforesaid) was taken from Millcreek Township, and annexed to the said city, and not built upon or cut up into city lots, shall be designated as the rural district of the said city of Erie, and all lands within said district shall be assessed as farm lands and rated as such; provided that whenever any tract of land, lying within said district, shall be laid out into city lots and sold as such, then the same shall cease to be rated and assessed as farm lands, and the taxes thereon shall be levied and collected in like manner as on the real estate, within said city, as is now required by law.

Ordinance, 4th February, 1882:—That for the year 1881, and during each and every year thereafter, while this ordinance is in force, all lands in the city of Erie, taken from Millcreek Township, by the Act of February 25th, 1870, extending the limits of said city of Erie, that are or shall hereafter be assessed as farm lands, shall be allowed an abatement equal to one half the rate assessed on other lands in said city of Erie; and the city clerk is hereby directed, in making out the duplicates of city taxes, to deduct the said abatement as above provided.

In 1879, 1880, 1881, and 1882, the defendants' lands, which at the time of the extension were in Millcreek Township, were returned by the assessors as farm lands, and were by the city councils, during each of those years, allowed an abatement of one half of the rate assessed, whilst the lands which were in South Erie were not so returned, and no abatement was made of the tax levied thereon.

The defendants' contention is, that the lands last mentioned are located within the agricultural or rural districts of the city; are used only for purposes of cultivation or farming, and receive no "benefit from lighting, paving, police, water, and other expenditures exclusively belonging" to the built up portions of the city; that therefore, in the assessment and levy of taxes, proper discrimation should have been made in their favor, as required by the Act of 1870. Further, that as the Constitution of Pennsylvania provides, that all taxes shall be uniform upon the same class of subjects, within the territorial limits of the authority levying the same, the taxes upon the farm lands, in the former district of South Erie, must be abated in the same proportion, and to the same extent, as the taxes upon the farm lands, formerly in Millcreek Township.

The facts alleged on part of the defendants are to some extent denied: the plaintiffs say, that the lands in question have the benefit of paved streets, gas, water, and the protection of the police. However this may be, in fact, it is certainly true, that the city councils constitute the legal tribunal for the determination of this question. The language of the Act is, that "the councils of said city shall so discriminate in laying the city taxes, as not to impose upon the rural portions those expenses which belong exclusively to the built up portions of the city" &c., "for which purpose the assessors shall distinguish in their returns" &c. The assessors duty is directory, only; it is the duty of the city councils to make the proper discrimination and abatement; the work of the assessor is intended merely to facilitate the action of councils.

The specific class of property entitled to the abatement is defined by the statute as follows:—"Lands, within said agri-

cultural or rural districts, used for the purpose of cultivation or farming, and not having any of said privileges, shall be assessed as farm lands and rated as such." The defendants allege, as we have said, that the lands in question, are in fact farm lands, not having any of said privileges; but the only tribunal having jurisdiction of this inquiry, has determined the fact otherwise, and we cannot disregard that determination. The whole question of discrimination is by the statute committed to the discretion of the city councils; that discretion is of course not absolute; it is not to be exercised according to mere pleasure or caprice, but under the law; and when the law has confided to a special tribunal the authority to determine certain matters, arising in the course of its duties, the decision of that tribunal, within the scope of its authority, is conclusive.

Whether the owners of this property, were, under the provisions of the statute entitled to the abatement, depended upon certain facts and circumstances, the subject of proof. The decision of councils determined these facts; no appeal is given, or provided for, and that decision is therefore final. The right to impose taxes for the support of the government, in all its departments, state, county, or municipal, is the prerogative of the legislature. Subject to the restriction of the constitution, that power may be exercised by such agencies as the legislature may establish for that purpose.

The assessment was made by the proper officer, the land was a proper subject of taxation, and the tax was imposed by the proper authority; there can therefore be no legal defence to the payment of the tax.

If, however, the discretion thus conferred is abused, no doubt the power of a Court of equity would be adequate to restrain the perpetration of a palpable wrong. But as this Court said in Saltsman *v.* City of Erie, 9 Pitts. Leg. Jour., N. S., 55, " within a sound exercise of the discretionary power, a Court of equity would not interfere with the adjusted rate, for this would be to assume to exercise the powers delegated only to the councils."

There is evidence to show, that the streets of the city surrounding this property are paved; that other streets have been opened wholly or partially through these lands, dividing them into a dozen or more different lots; that the paved streets are lighted with gas, and are supplied at various points with water pipes and hydrants, communicating with the water works of the city; that the drainage of the lots is into the city sewers; that the waste from a slaughter house erected thereon is received into one of these sewers, and is conveyed away; and we may readily assume that the lands in question

[Central Bank v. Earley.]

may be largely benefited by these various city improvements. We cannot at all events say, in view of all the evidence, that any such wanton abuse of power, or omission of duty, on the part of the city councils, has been shown as would have induced a chancellor to restrain the collection; and if the defendants below are not entitled to equitable relief in that form, they certainly cannot in a suit, under the Act of 1874, set up such a defence, in equity, against the collection.

We are of opinion also that the learned judge erred, in his instructions to the jury, as set forth in the eighth assignment of error. The assessments were not in excess of the authority conferred by the statute, the city had power to levy for different purposes, as great a rate as was actually levied, and if the question had been raised at the trial, the specific purposes to which the taxes were to be applied, would doubtless have been shown; but if this were not so, the levy was validated by the Act of 30th April, 1885, P. L., 11.

> The judgment is therefore reversed, and a *venire facias de novo* is awarded.