## Falls Creek Borough v. Jefferson County et al.

*Raymond E. Brown* and *Matthew A. Crawford*, for plaintiff.

*Lavelle A. Wilson*, for defendants.

LONG, P. J., July 11, 1941.—Plaintiff brought an action in assumpsit against defendants. It filed and served a statement of claim, to which defendants have filed an affidavit of defense raising questions of law.

From the pleadings we have the following facts for our consideration:

1. Plaintiff, Borough of Falls Creek, is a municipal

corporation, and a political subdivision of the County of Jefferson in the Commonwealth of Pennsylvania.

2. County of Jefferson, defendant, is likewise a municipal corporation and a political subdivision of the Commonwealth of Pennsylvania. M. C. Sutter, G. O. Schuckers, and Homer Reitz, defendants, are the duly-elected and qualified county commissioners of said county.

3. At a county treasurer's sale held in said County of Jefferson on August 3, 1931, the latter's county commissioners purchased, as required by section 10 of the Act of May 29, 1931, P. L. 280, 72 PS §5971j, a certain tract of seated land situated in the plaintiff borough, assessed in the name of W. C. Pentz and valued for the purposes of taxation at $65, and returned by the tax collector of said borough for unpaid and delinquent taxes for the years 1927, 1928, and 1929.

4. Such unpaid and delinquent taxes for the years 1927, 1928, and 1929, respectively, included items due and owing to the plaintiff for street, street bond, light and water, aggregating $1.99.

5. The taxes levied by plaintiff borough and charged against said land for the years 1930 and 1931, respectively, were as follows: Street, street bond, light and water, aggregating $1.30.

6. After the purchase of said land by said county commissioners on August 3, 1931, they entered in a book provided for the purpose the name of the person as whose land the same was sold, a brief description of the property, and the amount of taxes and costs for which it was sold, and, for a period of five years following such purchase, the county commissioners, in separate columns in said book, charged the land with like county, borough, school, and poor taxes as would have been chargeable against it had the same not been purchased by them, as provided and required by section 16 of the Act of May 29, 1931, P. L. 280, 72 PS §5971p. They likewise entered in the book taxes for

the years 1930 and 1931, including the items mentioned in the preceding fifth paragraph.

7. The taxes so charged in the book by the county commissioners for the years 1932 to 1936, inclusive, include the following items: Street, street bond, and light, aggregating $3.60.

8. The period within which the former owner of said land could have redeemed the same expired on August 3, 1936.

9. On June 13, 1939, the county commissioners sold the land at private sale pursuant to the provisions of the Act of May 25, 1933, P. L. 1019, as amended by the Act of July 18, 1935, P. L. 1168, 72 PS §5970a, and received therefor the sum of $45 plus costs of publication, which purchase price is sufficient to pay all of the taxes for which said land was sold and interest thereon, and the costs of said treasurer's sale, together with all of the taxes charged against the same as aforesaid, with interest thereon.

10. Plaintiff avers that defendants are indebted, by virtue of an implied contract, to plaintiff by reason of said commissioners' sale made on June 13, 1939, in the sum of $6.89, being taxes charged against said land as aforesaid for the year 1927 to 1936, inclusive, plus interest on the total taxes for each year, as set forth in paragraphs 4, 5 and 7 hereof, beginning with January 1, 1928. . . .

### Discussion

This matter came on for argument, at which time counsel for the respective parties furnished the court with elaborate briefs. They have carefully analyzed the various statutes relating to the sale of seated lands by the county treasurer and the county commissioners. They have ingeniously stated their theories of how the amounts realized by the county commissioners from the sale of said lands should be distributed. The court will be required to interpret the various statutes involved, inter alia, the Acts of May 29, 1931, P. L. 280, as

amended by the Acts of July 12, 1935, P. L. 661, July 19, 1935, P. L. 1321, and June 20, 1939, P. L. 498, 72 PS §5971a to §5971q, inclusive, and determine how they compare with prior cognate statutes in relation to the subject involved.

The first question to arise is: What was the intention of the legislature at the time it passed the various statutes under discussion? Did it intend that the districts entitled thereto, to wit, the boroughs, townships, etc., should receive their proportionate amounts paid for taxes, etc., when the property returned for taxes was redeemed between the time the collector of taxes made return to the county commissioners and before the latter sold the land at public or private sale? Or, did it intend that the districts, to wit, boroughs, townships, etc., should participate in the distribution, regardless of whether the land returned for taxes was redeemed or sold by the county commissioners after the redemption period had expired?

It is a well-recognized principle in ascertaining the intention of the legislature in passing a statute that in every case where the construction of an act is involved its history may be resorted to as a guide: Miles' Estate, 272 Pa. 329; Commonwealth v. Quaker City Cab Co., 287 Pa. 161; Commonwealth v. Charles, 114 Pa. Superior Ct. 473.

Mr. Justice Kephart, while speaking for the Supreme Court in Wilson et ux. v. Philadelphia School District et al., 328 Pa. 225, at page 229, said:

"The taxing power, one of the highest prerogatives, if not the highest, of the legislature, must be exercised through representatives chosen by the people. It is clearly within the interdiction of this principle of constitutional government against delegation. True, in this state, and in many others, the power to tax has been delegated to and exercised by smaller units of state government, such as municipal bodies chosen by the people. See *Sharpless v. Philadelphia*, supra [21 Pa.

147]. For, while the principle of non-delegation of taxing power is the general rule, delegation to municipal authorities has been recognized as lawful: *Butler's Appeal* [73 Pa. 448] and *City of Erie v. Reed* [113 Pa. 468] supra; *Durach's Appeal*, 62 Pa. 491; . . . This is an exception to the general rule, but such delegation is kept within defined lines, with supervisory control always vested in elective bodies. There are reasons for this exception, at least in this state. Justice Sharswood in *Durach's Appeal*, supra, at pp. 493, 494, said: 'Municipalities, such as counties, cities and boroughs, are public corporations created by the government for political purposes. They are invested with subordinate legislative powers for local purposes connected with the public good . . . To carry out these objects [of local government] there must be money, and hence the necessity of taxation for the purpose.' These local units of government possess a legislative body chosen by the people, and delegation of power to them does not actually remove this important subject from the control of the people. Justice Sharswood stated that the great principle which lies at the base of our tax institution is popular representation . . . It was the reliance on this principle that induced the framers of our Constitution to plant in the legislature the taxing power without stint or reservation. As popular representation is one of the attributes of our lesser units of government, it would seem that the theory he speaks of is maintained by delegation to them.

"There is another historical reason which supports the right of the legislature to entrust local taxation to municipal governments. Local governmental units, in many instances, antedated federal or state governments and before their inception levied taxes. In this state this is particularly true. Our earliest taxes were levied by the townships under the laws of the Duke of York for poor relief and governmental expenses. Under the proprietary government the county was the taxing

unit. When the legislature authorized cities, townships, boroughs and counties to levy taxes, it merely carried on a system that had been historically in existence." See Lighton et al. v. Abington Township et al., 336 Pa. 345.

In construing a statute, it will be presumed that the legislature intended what is reasonable and effectual, and not what is productive of absurd or anomalous consequences or is impossible and incapable of execution: Driskel et al. v. O'Connor et al., 339 Pa. 556.

The learned counsel for defendants contends that there is no authority in law directing the county commissioners to distribute any portion of the proceeds received by them for private sale of county lands to any municipality and, regardless of what the county commissioners personally would like to do for plaintiff and other municipalities having similar claims, nevertheless, they are the fiscal agents of the county and its funds and as such guardians thereof are required to have legal authority before any such funds may be paid out.

The learned counsel for plaintiff contend that a fair construction of the various statutes involved can lead to no conclusion other than that plaintiff is entitled to participate, regardless of whether the funds derived from taxes were received by way of redemption or by public or private sale on the part of the county commissioners.

Has the legislature used the same or similar language in statutes involved in the instant case which was used in prior cognate statutes? We shall refer to early legislation.

The Act of March 13, 1815, page 177, 6 Smith's Laws 299: "An act to amend the act, entitled 'An act directing the mode of selling unseated lands for taxes, and for other purposes' "

Section 5 directed the commissioners to ". . . provide a book, wherein shall be entered the name of the per-

son as whose estate the same shall have been sold, the quantity of land, and the amount of taxes it was sold for, and every such tract of land shall not thereafter, so long as the same shall remain the property of the county, be charged in the duplicate of the proper collector; but for five years next following such sale, if it shall so long remain unredeemed, the commissioners shall, in separate columns in the same book, *charge every such tract of land with reasonable county and road tax . . .*" (Italics supplied.)

Section 6 provided: "That the right of redemption shall remain in the real owner of such land for five years after such sale, and on paying the treasurer of the county all the taxes and costs due thereon at the time of sale, and interest therefor for the same time, and also the taxes which shall have been assessed thereon from year to year after the sale, and interest of each assessment to be counted from the time it ought to have been paid, and on the production of the treasurer's receipt, the commissioners shall . . . convey to the person who shall have been the owner of the land at the time of sale . . . all the right and title which the county may have acquired under such sale as aforesaid; *the monies so received for road taxes shall be paid to the supervisors of the roads of the township within which such lands shall lie, on orders to be drawn by the commissioners on the treasurer, to be applied by them in making and repairing the roads and highways in their respective townships.*" (Italics supplied.)

Section 7 provided: "That if the owner of any such land shall not redeem the same within the period aforesaid, it shall thereafter be lawful for the commissioners to sell any such land, by public sale, and make a deed therefor to the purchaser, . . . but no tract shall be sold for a sum less than the amount of taxes, cost and interest, which shall be due at the time of such sale by the commissioners . . ."

This act was supplemented by the Act of March 29, 1824, P. L. 167, which authorized "the commission-

ers . . . to sell, at public sale, . . . unseated lands which have been purchased for the use of the county, or which hereafter may be purchased from the treasurers of said counties," in pursuance of the Act of 1815, supra, when the same remained unredeemed for five years and upwards for the best price that could be obtained for the same; and in the Act of April 29, 1844, P. L. 486, sec. 41, it was provided:

"That all real estate within this commonwealth, on which personal property cannot be found sufficient to pay the taxes assessed thereon, and where the owner or owners thereof neglect or refuse to pay the said taxes, the collectors of the townships in which said lands lie, shall return the same to the commissioners of the several counties; and the said lands *shall be sold as unseated lands are now sold,* in satisfaction of the taxes due by the said owner or owners . . ." (Italics supplied.)

It will be observed that in no instance did the Acts of 1815, 1824, and 1844, respectively, specifically set forth that where such real estate was sold by the county commissioners the various taxing districts, subdivisions of said county, should participate in the funds received therefrom. However, Mr. Justice Trunkey, in Township of Rush v. Schuylkill County, 100 Pa. 356, speaking for the Supreme Court in 1883, while interpreting the Act of 1815, said (p. 360):

"It is manifest that the commissioners are not bound to pay the road taxes assessed on lands purchased by them at treasurer's sales, until said lands shall be redeemed, or if unredeemed, not until they shall be sold at commissioners' sale. . . . The amount of taxes for which the land was sold are charged against it, and each year for five years following the sale, if the land shall remain so long unredeemed, it shall be charged with reasonable county and road taxes. When redeemed by payment of the taxes for which it was sold, and also the taxes subsequently assessed, with interest,

then the moneys received by the treasurer for road taxes shall be paid to the supervisors. The time of payment is explicitly fixed by the statute. It is not the duty of the commissioners to advance money for road taxes. They are made the public agents to buy in the lands, when they think it would advantage the public to do so, where otherwise they would not sell for the amount of taxes charged thereon, to the end, if possible, that the taxes may be realized.

"After the time for redemption shall have expired, the title of the county is absolute, and the commissioners may sell the lands. . . . At the date of sale the road taxes become due and payable by the county, as in case of redemption. If the proceeds of sale are sufficient, the county shall pay not only the taxes due to the supervisors at the time of the treasurer's sale, but also the taxes charged on the tract for each year during the five years allowed for redemption. . . . The road taxes charged from year to year, during the redemption period, belong to the township, and must be paid to the township now, as before 1824, where the proceeds of sale are sufficient. But if the proceeds are insufficient to pay all taxes, are any preferred? It is noticeable that county and road taxes are treated alike throughout the statute. The commissioners assess and charge both during five years, unless the land be sooner redeemed, and after the end of said period until sale, neither tax is assessed and charged. No preference is given to either. If the fund is not enough to pay all, the county is liable to pay the township its proportion."

Where the legislature uses the same language in the statute as in a prior cognate statute, which has been construed by the Supreme Court, the presumption is that such language is to be interpreted in the same way as it was when considering the earlier statute: Lower Nazareth Township Supervisors' Appeal, 341 Pa. 171.

The learned counsel for defendants contends that, assuming Justice Trunkey's opinion is good law, nevertheless, it cannot apply here because the statutes under discussion have been repealed.

The Act of July 8, 1885, P. L. 268—"An act Relative to the purchase of lands by county commissioners at sales thereof for arrearages of taxes" — was passed after the decision in Township of Rush v. Schuylkill County, supra. It provided that where the county commissioners purchased such lands from the county treasurer the lands should not be charged in the duplicate, but for five years, if unredeemed, the commissioners were required to ". . . charge every such tract of land with like county, school, road, or other taxes as would have been chargeable against the said land had the same not been sold and purchased by the commissioners. . . ."

Section 3 provided for the right of redemption for five years and "on paying the treasurer of the county all the taxes and costs . . . and interest thereon and also the taxes which shall have been levied and charged thereon, from year to year, after the sale and interest thereon . . ." On a conveyance by the commissioners to the owner *the moneys received shall be paid to the respective townships or districts in which such lands shall lie as they may be entitled thereto.*" (Italics supplied.)

Section 4 provided that, on failure to redeem, the commissioners might sell "at public sale, and make a deed or deeds therefor to the purchaser . . . *with like effect and in the same manner that unseated lands purchased by county commissioners are now by law authorized to be sold by them. . .*" (Italics supplied.)

The Act of July 8, 1885, P. L. 268, was repealed by the Act of June 4, 1901, P. L. 364. See Day v. Swanson, 236 Pa. 493, and from 1901 until 1913 there was no law in effect for the return of seated land for taxes.

The title of the Act of May 21, 1913, P. L. 285, is: "An act Providing for the return of taxes on seated lands in counties, poor districts, boroughs, incorporated towns and townships, for county, poor, borough, town, or township taxes, respectively; and providing for the sale of such lands for taxes."

Section 1 provided: "That return of taxes assessed by the authorities of any county, poor district, borough, incorporated town or township, against seated lands in such county, poor district, borough, town or township, shall be made whenever personal property cannot be found thereon sufficient to pay such taxes, *in the same manner and at the same time that return is now made for unpaid county taxes on unseated lands;* and whenever any such taxes, against said lands . . . shall not be paid within two years after the date of the assessment thereof, such seated lands . . . shall be advertised and sold by the proper county treasurer, *at the time and in the same manner, and under the same conditions and with the same effect, as unseated lands are now sold by such treasurer for unpaid county taxes.*" (Italics supplied.)

The Act of June 1, 1915, P. L. 660, amended section 1 of the Act of May 21, 1913, P. L. 285, so as to include school taxes.

The Act of 1913, supra, and its amendment, the Act of 1915, were repealed by the Act of May 9, 1929, P. L. 1684, 72 PS §5951, entitled "An act Authorizing and empowering the county treasurers of the several counties of this Commonwealth to sell at public sale all seated lands upon which taxes assessed on such seated lands by authority of any county, borough, town, township, school district, and poor district are delinquent and remain unpaid, and fixing penalties for such delinquency; authorizing county commissioners to purchase such lands under certain circumstances."

Section 12 of the Act of May 9, 1929, P. L. 1684, provided: "If any owner . . . shall . . . redeem such

real estate by an offer of the taxes . . . with the additional sum of twenty-five per centum, and any taxes which may have been levied against any such property since the treasurer's sale, and which remain unpaid, to the county treasurer, he shall receive and receipt for the same, and pay said taxes . . . over to the purchaser upon demand, *and the accrued taxes to the district entitled thereto* . . . ." (Italics supplied.)

Section 13 required the county commissioners to provide a book and enter therein and charge the land with like county, city, borough, town, township, school, and poor taxes, as would have been chargeable against the land had the same not been purchased by the county commissioners.

The latter act was, in turn, repealed by the Act of May 29, 1931, P. L. 280, entitled "An act Relating to delinquent taxes on seated lands, and prescribing interest charges on nonpayment thereof; requiring the receivers and collectors of county, city, borough, town, township, . . . to make a return to the county commissioners of such unpaid taxes, . . . authorizing the county treasurers to collect such taxes, and to sell seated lands at public sale for taxes heretofore or hereafter returned as unpaid; and authorizing the county commissioners to purchase such lands and resell the same under certain circumstances."

This act provides a complete system for returning delinquent taxes on seated lands to the county commissioners, the certification by them of the same to the county treasurer, the advertisement for sale of the same by the latter, and the sale and purchase thereof by the county commissioners where sufficient bid was not made to pay the taxes, interest, penalty, and costs. See 72 PS §5971a and sections following.

Section 10 of the Act of May 29, 1931, supra, as amended by the Act of July 19, 1935, P. L. 1321, provides, inter alia, that where an amount sufficient to

pay the taxes, interest, and costs is not bid, any such property shall be purchased by the county commissioners.

Section 15 — redemption money — provides that where the owner, etc., after a sale thereof by the treasurer, shall redeem such real estate for the benefit of the owner by payment of the taxes and interest for which the lands were sold and the costs, with an additional sum of 15 percent, and any taxes which may have been levied against any such property since the treasurer's sale, and which remain unpaid by the owner or redeemer, to the county treasurer, ". . . he shall receive and receipt for the same, and pay said taxes, interest, costs and additional percentage over to the purchaser upon demand, and the accrued taxes to the district entitled thereto . . ." See 72 PS §5971o.

Section 16 of the Act of May 29, 1931, P. L. 280, as amended by the Acts of July 19, 1935, P. L. 1321, and June 20, 1939, P. L. 498, 72 PS §5971p, directs that: "When the county commissioners shall purchase any real property at a county treasurer's sale, they shall provide a book wherein shall be entered: (a) the name of the person as whose land the same was sold; (b) a brief description of the property, together with any lot and block number; (c) the amount of taxes, interest, and costs for which it was sold. Such property shall not, so long as it remains the property of the county, be charged in the duplicate. During the redemption period following such sale, if the land remains unredeemed, the commissioners shall, in separate columns in the same book, charge every such tract of land with like county, city, borough, town, township, school and poor taxes, as would have been chargeable against the land had the same not been purchased by the county commissioners. The right of redemption of lands heretofore purchased by the county commissioners shall remain in the real owner of such lands, or other persons interested, for

five years after such sale to the county commissioners, and of all lands hereafter purchased by the county commissioners, such right shall remain for two years after such sale, and such redemption may be accomplished by a payment, within such period, to the county treasurer of all taxes, interest, and costs due thereon at the time of sale, and interest thereon, and also the taxes and interest which have been annually levied and charged thereon after the sale, and interest thereon beginning on the first day of January. . . ."

Section 17 of the Act of 1931, as amended by the Act of 1939, 72 PS §5971q, provides for the sale of such seated land purchased by the county commissioners, which shall not be redeemed within the time provided by law.

It is, therefore, apparent that, although the Act of 1815, supra, applied to unseated lands, nevertheless later statutes applicable to seated lands provide that said seated lands shall be sold as unseated lands are now sold (having reference to the Act of 1815 and its amendments). They further provide that the same shall be sold by the proper county treasurer at the time and in the same manner and under the same conditions and with the same effect as unseated lands are now sold by such treasurer for unpaid county taxes.

Furthermore, section 5 of the Act of 1815 provides that the commissioners provide a book setting forth, inter alia, the amount of taxes for which the land was sold and shall during the redemption period in a separate column in said book charge such land with reasonable county and road taxes. Section 6 provides on redemption that the money so received *for road purposes shall be paid to the supervisors of the roads of the township.*

It is submitted that in every instance thereafter like provisions for the municipal subdivisions of the county were specifically set forth or intended.

Tax statutes should receive a strict construction. In cases of doubt the construction should be against the government. See Scranton v. O'Malley Manufacturing Co., 341 Pa. 200. The legislature does not intend a result that is absurd, impossible of execution, or unreasonable: Statutory Construction Act of May 28, 1937, P. L. 1019, sec. 52, 46 PS §552; and if there is an actual ambiguity and the words are not explicit, we may consider, among other matters, the object to be attained and the consequences of a particular interpretation: section 51, 46 PS §551; Williams Township's Appeal, 139 Pa. Superior Ct. 146.

The case of Township of Rush v. Schuylkill County, supra, was decided in 1883. Numerous tax statutes have been passed since that date. Nevertheless, in no instance has the legislature stated specifically, in words, what should be done by the county commissioners with funds received for the sale of real estate purchased by them from the county treasurer. The apparent reason is that laws are presumed to be passed with deliberation and with full knowledge of all existing ones on the subject. The legislature in all these statutes used, in effect, the same language as that used in the prior cognate statute of 1815, supra, and supplements thereto, which was construed by the Supreme Court in Township of Rush v. Schuylkill County, supra. Consequently, the presumption is that such language must be interpreted in the same way it was when the appellate court considered the earlier statute. See Lower Nazareth Township Supervisors' Appeal, supra.

Unquestionably, the legislature intended that the boroughs, townships, etc., specified in the act, should receive their proportionate share of taxes returned and taxes charged against the real estate at the time the county commissioners received the money for said taxes, whether such real estate was redeemed or remained unredeemed and was sold by said commissioners. Otherwise, situations could arise where a

borough, township, or other taxing district would be unable to function because the greater portion of its taxes had been returned by its collector to the county commissioners and the real estate, against which the return was made, purchased by the commissioners and sold by them for failure to redeem. Equity and justice convince us that the legislature had no such unreasonable intention.

The county commissioners were agents and trustees for and in behalf of the county and its taxing municipal subdivisions in the purchase of land from the county treasurer at tax sale and continued in that capacity during the time that they held, sold, and collected the purchase price for the lands conveyed by them at private sale. Such trusteeship exists until distribution of the funds received has been made. They will have no desire to enrich the county with funds that rightfully belong to the plaintiff borough.

A fair construction of the various acts of assembly involved in the sale of the real estate in question can cause us to reach no conclusion other than that plaintiff's statement of claim should be sustained as fully as set forth in our

### Conclusions of law

1. That the statutes made the county commissioners agents of and trustees for the county and its taxing municipal subdivisions in collecting and distributing funds received by them as the result of the private sales of real estate described in the statement of claim.

2. That the County of Jefferson is liable to plaintiff as of June 13, 1939, the date of the sale of the W. C. Pentz lands, for the amount of taxes, interest, penalty, and costs returned by the collector of Falls Creek Borough, plus all taxes, interest, penalty, and costs charged by said commissioners against said land for like borough taxes as would have been chargeable against it had the same not been purchased by them, together with borough taxes, interest, penalty, and

costs for the years 1930 and 1931, as fully as entered by said county commissioners against said land and received by them by virtue of said sale.

Therefore, we make the following

*Order*

And now, July 11, 1941, after due and careful consideration, we are compelled to decide the questions of law raised in the affidavit of defense against defendants. They are hereby given a period of 15 days within which to file a supplemental affidavit of defense to the averments of fact set forth in plaintiff's statement of claim.