## City of New Kensington v. New Kensington Municipal Authority

*Anthony J. Bonadio, Vincent R. Smith* and *James Gregg,* for plaintiff.

*Carl E. Glock, Gilbert J. Helwig* and *Reed, Smith, Shaw & McClay,* for defendant.

BAUER, J., September 23, 1955.—The City of New Kensington sought an injunction to prevent disbursal of funds received from a bond issue authorized by the New Kensington Authority, which was created by the city for the purpose of providing a public water supply to the city. The bond issue netted (after the payment of an outstanding issue of $2,039,000) some $1,411,000 which the authority proposed to spend in modernizing its existing plant from the intake through the pumping station and to the distribution system.

The city complained that as long ago as December 1954 it had entered into preliminary negotiations with the Municipal Authority of Westmoreland County for the sale of New Kensington water system to the county authority, and which would have presupposed the water supply to have come from the county authority's reservoir at Beaver Dam some 10 miles away and not from the Allegheny River, from which the present water system of the city gets its supply.

It was shown that if the city goes through with its negotiations with the county water authority it will first recapture the city water works from the city authority and will then sell the same to the county authority. The city has shown that if such is the case any expenditures in the way of betterments or additions to the present plant of the city authority will be quite useless (the court has excepted from the binding effect of the injunction and has allowed the expenditure of money for additions to the present water supply for the purpose of permitting extensions to supply new customers; see an order entered on September 20, 1955).

The sole question presented for decision was should the status quo be maintained until the city determined whether the original proposal of the county authority to purchase the city's water works was the best that

could be obtained from the county authority. In the face of the knowledge that the city was interested in dealing with the county authority—even though the dealings were informal, as necessarily they had to be at this stage of the proceeding, the municipal authority whipped through a bond issue to supply the funds for its improvements, which bond issue and which improvements had been discussed by the authority for almost two years before final action was taken.

Final action was taken in a remarkably short time. The particular items of improvement were, to say the least, as late as March 1955 in a particularly fluid state. As late as May 18, 1955, the city authority was not sure whether it should refinance the existing bond issue or extend the same to provide the necessary moneys. On that date, without much by way of preliminaries, it determined to refinance the old issue so as to include the new capital needed. Final action was taken on May 27, 1955, to authorize the new bonds in the amount of $3,450,000. May 27, 1955, it may be observed, was on a Friday—not only a Friday, but that before the Memorial Day long weekend. On June 1, 1955, with but one business day intervening, the bonds were offered for sale in the Wall Street Journal in an advertisement of Moore, Leonard & Lynch, the financial agent of the authority, with a notice that the bonds could be secured from a dozen other bond houses both in Pittsburgh and in various cities of the East.

The city charged, and the chancellor finds, that the circumstances of the issuance of these bonds, the disregard of the pendency of the negotiations between the city and the county authority, the fact that the city was not once consulted, or even advised of the proposal of the city authority to sell those bonds and proceed with the improvements, limited as they must be to the existing facilities, justified the city in seek-

ing an injunction for the purpose of restraining the disbursement of funds until the city had an opportunity to close with the Municipal Authority of Westmoreland County. The method by which the bonds were issued and the municipal authority was committed to the program which the city seeks to halt was, to say the least, secret. It takes on a much more sinister aspect in view of the fact that the authority had knowledge that the city was considering another disposition of its water works. See City of Erie v. Reed's Executors, 113 Pa. 468 (476); Wilson et ux. v. Philadelphia School District et al., 328 Pa. 225, 239; Downing v. Erie City School District et al., 360 Pa. 29, 33. If the $1,411,000 is expended by the city authority, such a disbursement, using up all of the proceeds of the bond issue will in all probability definitely prevent the city from making any arrangement with the county authority for the supply of water, for it would commit the water supplier, whoever it may be, to the Allegheny River as a source.

It is well known that a city must act through its municipal officers; but the city cannot act in such a spontaneous manner as the city authority did. It is entitled to some period of deliberation. While it is perhaps true that the city authority need not wait indefinitely for the city to determine whether or not it would recapture these facilities and make some other arrangement for the supply of water, the city authority had no right to take action which would prevent the city in the exercise of due discretion to make another arrangement.

It is for these reasons that the injunction was issued in the first instance. The credible evidence by its weight fairly supports the city's position. The testimony issued by the city authority was largely vague and in many cases evasive. So much doubt was cast upon the proposal by the chief witness for the city

authority in view of the countervailing evidence of the experts of the city, that the court deemed it necessary under rule 1515 to appoint experts, one an accountant, the other an engineer, to aid it in the disposition of this case. In view of the appeal from the injunction, the court has not had the benefit of their advice. From the record as it now appears from the due consideration of the evidence, considering the credibility of the witnesses, the court believes that it was amply justified in entering the order in the first instance. After all the injunction is merely a stay. It merely prevents a disestablishment of the status quo; it affords the city in this important matter, which involves the health and safety of all the residents, some time to explore the situation to see whether or not $1,411,000 should be sunk in the present system or whether it should be invested in a new system.

And now, September 23, 1955, this opinion is directed to be filed and copies served on all counsel of record.